## Cleere *v.* Cleere.

*Bill in Equity to compel Final Settlement of Administration and Guardianship, and enforce Vendor's Lien.*

1. *Settlement by administrator with himself as guardian.*—When an administrator is also the guardian of an infant distributee, a settlement of his accounts in the Probate Court, by which a decree is rendered against him as administrator, in favor of himself as guardian, is a nullity, that court having no jurisdiction of the settlement on account of the antagonistic interests represented by him.

2. *Releases in writing, under statutory provisions; equitable relief against.*—Under statutory provisions, receipts, releases, and discharges in writing, and settlements in compromise of debts, whether under seal or not, if made in good faith, are valid and operative according to the intention of the parties (Code, §§ 3039-40; ; but they may, nevertheless, be shown to have been given under a mistake of fact, or obtained by surprise, undue influence, misrepresentation or concealment of material facts, or avoided for any cause sufficient in equity to invalidate and set aside a contract.

3. *Inadequacy of consideration, as ground of equitable relief against contract.*—Mere inadequacy of consideration is not, ordinarily, a sufficient ground for setting aside a contract, unless the inadequacy is so great. as to raise a presumption of fraud; yet, when coupled with circumstances showing bad faith, undue influence, weakness of mind, pecuniary distress, or suspicions of fraud, it may be sufficient to induce a court of equity to withhold the benefits of the contract from the offending party.

4. *Agreement of compromise; not enforced on facts in this case.*—In this case, the complainant sought by his bill to compel a settlement of the administration of his father's estate, and of the accounts of his guardian, who was the administrator, and to enforce a vendor's lien on lands which the administrator had bought at his own sale, and afterwards conveyed by mortgage to the sureties on his bonds as administrator and guardian; and the sureties were made defendants with the administrator and guardian. Pending the suit, a written agreement of settlement and compromise was effected with the complainant, by a surety who was the executor of a deceased mortgagee of a part of the land, by

[Cleere v. Cleere.]

which complainant agreed to accept $1,500 in full satisfaction of the amount due him, which was over $5,000, to bid that sum for a small part of the land not worth more than $500, discharge the sureties from further liability, and to release his lien on the other lands. *Held*, that while the inadequacy of consideration might not, of itself, be sufficient to justify the court in setting aside the settlement, the evidence also showing undue advantage and bad faith practiced by the executor in procuring the complainant's assent and signature, the court would not enforce it against him, at the instance of the sureties, when the executor's successor in the administration had repudiated it.

APPEAL from the Chancery Court of Franklin.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 15th July, 1878, by Lawrence P. Cleere, a son of George D. Cleere, senior, deceased, against George D. Cleere, junior, individually, as administrator of said decedent's estate, and as guardian of the complainant, and against several other persons ; and sought to compel a settlement of said administration and guardianship, and to enforce a vendor's lien on certain lands which the administrator had sold under an order of the Probate Court, becoming himself the purchaser, for the amount due the complainant as his distributive share of the purchase-money. James E. Moore and others, sureties on the bonds of said administrator and guardian, for whose indemnity he had executed a mortgage on the lands, were joined as defendants to the bill; and said Moore was also made a defendant as the executor of the last will and testament of S. S. Anderson, deceased, to whom the administrator had executed another mortgage on the lands, or a part of them.

George D. Cleere, senior, died intestate prior to the 25th May, 1857, and letters of administration on his estate were on that day granted to said George D. Cleere, junior, jointly with the widow. The order for the sale of the lands was granted on the 11th January, 1858, on the ground that they could not be equitably divided without a sale. The sale was reported and confirmed, the price bid being $18,255.20 ; but the purchase-money was never paid, and no conveyance was ever executed to the administrator, as the purchaser, under the order of the court. The letters of guardianship were granted on the 22d March, 1858. Under a decretal order of reference in the cause, the register reported that the amount due to the complainant from the administrator, as his distributive share of the estate, was $7,671.42, but a balance of $2,320.78 was due from him to said administrator as guardian ; and the report was confirmed. Pending the suit, an agreement of compromise was entered into between the complainant and said James E. Moore as the

[Cleere v. Cleere.]

executor of S. S. Anderson's will; and this compromise
was set up by said Moore in an amended and supplemental
answer to the bill, and also in an amendment to a cross-bill
which he had filed. The complainant objected to the en-
forcement of the agreement, and sought to set it aside, on
grounds which appear in the opinion of the court. The
chancellor refused to set aside the agreement, and rendered
a decree, on final hearing on pleadings and proof, according
to its terms; and this part of the decree is now assigned as
error.

The agreement of compromise, which was signed only by
the complainant, was under seal, dated January 20th, 1880,
and in these words: "Received, Belgreen, Alabama, Jan-
uary 20th, 1880, of James E. Moore, executor of the last
will and testament of S. S. Anderson, deceased, the sum of
one thousand five hundred dollars, by assignment of that
amount of the proceeds of the following lands, which, with
other lands were mortgaged to said S. S. Anderson by
Geo. D. Cleere and his wife (Nancy Cleere), under date of
April 8th, 1876, to secure the payment of a certain note
therein described, which mortgage was duly recorded," &c.;
describing the lands by government numbers, as containing
231 acres. "The said James E. Moore, as such executor,
agrees to sell said lands, under and by virtue of said mort-
gage, at as early a day as the law will permit, and, if said
mortgage should be satisfied without a sale, to pay me the
above sum of $1,500 of the proceeds of the same; and I
agree that, at said sale, I will bid said sum of $1,500 for
said lands; which sum, paid as above, I accept as a full
payment from the estate of said S. S. Anderson, and from
James E. Moore, individually, and as surety on the bonds
of George D. Cleere as administrator of the estate of George
D. Cleere, deceased, and as guardian for me; and J. T.
Reynolds and Thomas Masterson, as individuals, and as
sureties on the said bonds of said George D. Cleere as ad-
ministrator and guardian, and Peter Barker and Jesse
Hurley as sureties on the said bond of George D. Cleere as
such administrator. And I hereby release and discharge
the estate of said Anderson, and said James E. Moore, J.
T. Reynolds, Thomas Masterson, Peter Barker and Jesse
Hurley, from any and all liabilities to me as individuals, or
as sureties on any and all of the bonds above described;
and I waive all vendor's liens, or other liens of any char-
acter whatever, to which I may be entitled, in or on any of
the property conveyed by mortgage to said S. S. Anderson,
deceased, or in any mortgage executed by said George D.
Cleere and wife to said Masterson, Reynolds and Moore,

[Cleere v. Cleere.]

except a vendor's lien on the north-west quarter of section
eleven (11), township seven (7), range ten (10) west;" which
quarter-section said George D. Cleere had conveyed to his
wife, by deed dated April 11th, 1876. "Be it understood,
that this instrument is intended to be a full discharge to all
persons and estates, from all further or future liabilities to
me, by reason of any claim that I am entitled to from
the estate of my deceased father, Geo. D. Cleere, or from
Geo. D. Cleere as my guardian, except to said Geo. D.
Cleere alone as administrator and as guardian; and that it
is also intended in this instrument to waive all liens, of what-
ever name or character, which I might be entitled to, against
any and all property, except said quarter-section last de-
scribed, against which I do not waive any lien. And If urther
agree to dismiss a suit commenced by me by bill filed in the
Chancery Court of Franklin county, against all parties to said
suit except said Geo. D. Cleere, individually, as administra-
tor, and as guardian; that I agree to dismiss as to James E.
Moore, as executor of S. S. Anderson individually, and J. T.
Reynolds as surety, Thomas Masterson and others, and
James E. Moore as the executor of the last will of said
S. S. Anderson; agreeing also to pay one half of the ac-
crued costs in said suit. And on the presentation of this
instrument, the register in chancery of said court, or the
chancellor, is authorized to dismiss said suit, as to all the
parties except said George D. Cleere, as above stated, and
on the terms above stated. In witness whereof," &c.

BRICKELL, SEMPLE & GUNTER, and WM. & L. B. COOPER,·
for the appellant. — (1.) The agreement of compromise
was executory, and was wanting in mutuality; because it
could not be enforced against James E. Moore, who entered
into it as executor of Anderson, whose estate he could not
bind; and it has been repudiated by his successor in the
administration, while the other sureties, strangers to the
agreement, seek to enforce it for their own benefit. (2.)
That the executor could not bind his testator's estate by
such contract, see *Kirkman v. Benham*, 28 Ala. 501; *Jones
v. Dawson*, 19 Ala. 679; *Rogers v. Grannis & Co.*, 20 Ala.
250; *Dearman v. Dearman*, 4 Ala. 521; *Fombro v. Gantt*, 12
Ala. 298; *Bogan v. Camp*, 30 Ala. 276; *Shelton v. Carpenter*,
60 Ala. 211; *Swoope v. Trotter*, 4 Porter, 27. (3.) That a
contract, which can not be enforced against one party, or
which has been repudiated by him, will not be enforced
against the other, at the instance of persons claiming under
the former, see *Nelson & Hatch v. Dunn*, 15 Ala. 580; *Martin
v. Chapman*, 6 Porter, 344; *Green v. Wells*, 2 Cal. 584; 43

[Cleere v. Cleere.]

Ill. 519 ; 26 N. J. Law, 284 ; *Guthrie v. Thompson,* 1 Oregon, 353 ; 15 Serg. & R. 227 ; 9 Ind. 75 ; *Dodge v. Greely,* 31 Me. 343 ; *Lucy v. Bundy,* 9 N. H. 298 ; *Allen v. Webb,* 24 N. H. 278 ; *Webb v. Stone, Ib.* 282 ; *Preble v. Bottom,* 27 Vt. 249 ; *Goodrich v. Laffin,* 1 Pick. 57 ; *Bryant v. Isburgh,* 74 Amer. Dec. 657 ; *Bannister v. Read,* 1 Gilm. (Ill.) 99. (4.) The attempt to enforce this agreement is in the nature of a bill to enforce the specific execution of a contract ; as to which the rule is, that the contract must be fair, just and reasonable in all its parts, founded on sufficient consideration, and mutually binding on both parties.—1 Story's Equity, §§ 750, 769, notes ; Story's Eq. Pl., §§ 394, 398 ; *Young v. Daniels,* 63 Amer. Dec. 477-86, note ; *Johnson v. Hubbell,* 66 Amer. Dec. 781 ; *Rider v. Gray,* 69 Amer. Dec. 135 ; *Greene v. Covilland,* 70 Ala. 725 ; *Gentry v. Rogers,* 40 Ala. 442 ; *Gould v. Womack,* 2 Ala. 83 ; *Andrews v. Andrews,* 28 Ala. 432 ; *Casey v. Holmes,* 10 Ala. 776 ; *Ellis v. Burden,* 1 Ala. 459. Here, the agreement is not only wanting in mutuality, but has been repudiated ; is without consideration, and was attended with circumstances which the law stamps as fraudulent. (5.) The statute in regard to releases and discharges in writing (Code, §§ 3039-40), can not be construed to justify the enforcement of this agreement.—*Singleton v. Thomas,* 73 Ala. 205 ; *Cowan & Co. v. Sapp,* 74 Ala. 49-51.

W. P. CHITWOOD, *contra.*—(1.) The law encourages compromises. A court of equity will uphold a compromise, when entered into with due deliberation, as reasonable in itself, and supported by principles of public policy.—1 Story's Equity, § 121. (2.) The statute comes in aid of this principle, and declares that such settlements, when in writing, shall have effect according to the intention of the parties ; and the decisions of this court harmonize with the common law and the statutes.—Code, §§ 3039-40 ; *Motley v. Motley,* 45 Ala. 555 ; *Hart v. Freeman,* 42 Ala. 570. (3.) The compromise released the sureties only, leaving the complainant free to proceed against the guardian and administrator ; and it is believed to be in every way fair. The litigation had been long pending ; the complainant must have known all his rights, and is charged with notice of all material facts ; he entered into the compromise with due deliberation, and the evidence does not sustain the plea of drunkenness.—1 Story's Equity, § 231 ; *Donaldson v. Posey,* 13 Ala. 752 ; 1 Brick. Digest, 382, §§ 107-8. (4.) As to the circumstances attending the execution of the writing, the evidence being conflicting, this court will not disturb the decision of the chancellor, unless clearly shown to be

[Cleere v. Cleere.]

wrong.—*Sawyers v. Baker*, 77 Ala. 461 ; *Rather v. Young*, 56 Ala. 90 ; *Nooe v. Garner*, 70 Ala. 443 ; *Butts v. Broughton*,. 72 Ala. 294.

CLOPTON, J.—The only assignments of error urged in argument are directed to that part of the decree from which the appeal is taken, which gives effect to a compromise and settlement entered into by appellant with James E. Moore, as executor of S. S. Anderson. The instrument, which is signed by appellant alone, acknowledges having received from Moore, as such executor, the sum of fifteen hundred dollars, by the assignment of the proceeds of one hundred and thirty-one acres of land, specially described, which constituted a part of a large tract of land mortgaged by appellee, G. D. Cleere, to Anderson. Moore, as such executor, agreed to sell the lands under the mortgage, at as early a day as the law will permit, and appellant agreed to bid for the lands the amount assigned ; and should the mortgage be satisfied without a sale, Moore was to pay appellant fifteen hundred dollars, which sum paid, as above mentioned, appellant accepted as full payment from the estate of Anderson, and from the sureties on the bonds of Cleere as administrator and as guardian, and released and discharged them from any and all liabilities as individuals and as such sureties. Appellant further agreed to waive all liens, as vendor or otherwise, to which he was entitled, on the lands embraced in the mortgage to Anderson, or in any mortgage to the sureties on the guardian's bond, and to .dismiss the present suit as to all the defendants, except the administrator and guardian, and especially as to the estate of Anderson and the sureties on both bonds ; Moore agreeing to pay one half of the accrued costs. On the presentation of the instrument, the register or chancellor was authorized to dismiss the suit, on the terms stated, as to the parties mentioned. We have stated the substance and legal effect, as the instrument is unnecessarily prolix. A statement of the purposes of the bill, and of the state of the litigation, showing the relative rights and liabilities of the parties,. is necessary to a full and correct understanding of the settlement and release.

Upon the death of complainant's father, the defendant, G. D. Cleere, qualified as administrator of his estate, and was subsequently appointed guardian of complainant, who was then a minor. Under an order of the Probate Court, the administrator sold the lands of the estate, and himself became the purchaser. The sale was reported and confirmed, but no report of the payment of the purchase-money

[Cleere v. Cleere.]

was made, and no conveyance executed under an order of the court. The administrator, while being both administrator and guardian, made a final settlement of his administration, in April, 1860, on which he was charged with the purchase-money of the lands and the personal assets, and was directed to retain as guardian the share ascertained to be coming to complainant, being $3,492.34. This settlement is a nullity, the Probate Court being without jurisdiction on account of the antagonistic interests represented by the administrator; and the case must be considered as if no final settlement had been made.—*Hays v. Cockrell*, 41 Ala. 75; *Tankersly v. Pettis*, 61 Ala. 354.

On April 8, 1876, the administrator executed to Anderson a mortgage on the lands, except a quarter-section which he conveyed to his wife, to secure a described indebtedness of over ten thousand dollars; and subsequently, but on the same day, made a second mortgage to the sureties on his bond as guardian, to indemnify them as such sureties, and to secure certain debts which he owed them individually. The bill was brought by appellant, in July, 1878, to obtain a final settlement of the administration and guardianship, and to enforce a vendor's lien on the lands, for the amount of the unpaid purchase-money due him, claiming a lien superior to the lien created by the mortgages. Anderson having died, Moore was made a defendant as his executor, and as an individual; and the other sureties on both bonds, included in the compromise and settlement, were made parties. Moore, as such executor, filed a cross-bill to appoint a receiver, and to marshal the securities; and a cross-bill was also filed by the sureties on the guardian's bond, being the mortgagees in the second mortgage. This was the *status* of the suit and the litigation at the time the compromise and settlement was entered into, January 20, 1880, so far as necessary to be stated for the purposes of this case. On May 11, 1880, the settlement and release were set up by amendment of the answers of Moore as executor, and of the sureties, and by amendment of the cross-bills. In the view we take of the question raised, it is unnecessary to consider whether effect should have been given to the settlement without requiring the performance by the defendant contracting party.

Sections 3039 and 3040 of the Code are legislative enactments founded on the policy of the law, which favors the compromise and termination of litigation, whatever may be its character. The first declares: "All receipts, releases, and discharges in writing, whether of a debt of record, or a contract under seal or otherwise, must have effect accord-

SUPREME COURT [Dec. Term,

ing to the intention of the parties to the same." And the
second provides: "All settlements in writing, made in
good faith for the composition of debts, must be taken as
evidence, and held to operate according to the intention of
the parties, though no release under seal is given, and no new
consideration has passed." The purpose of each section is
the abrogation of certain common-law rules, technical in
their nature. The effect is, to make valid and operative
written discharges, and written settlements for the compo-
sition of debts, though executed without a seal, and with-
out new or additional consideration.—*Singleton v. Thomas*,
73 Ala. 205. Other than these exemptions from the rules
at common law, releases and compromises derive no potency
from the statutes, and are governed by the rules which
equity applies in such cases. The statutes are designed to
give effect to releases and compositions according to the
intention of the parties, when made in good faith. They
may be shown to have been given by mistake of fact, or
by surprise, or obtained by undue influence, or by mis-
representation or concealment of material facts, or may be
avoided for any cause sufficient in equity to invalidate a
contract.—*Cowan v. Sapp*, 74 Ala. 44.

Though mere inadequacy of consideration, ordinarily, is
not sufficient to annul and set aside a contract, when the
parties are in a situation to exercise independent judgment
in determining its value, and to act knowingly and inten-
tionally; and though it furnishes no ground for the inter-
ference of equity, which in such case leaves the parties to
the consequences of their own improvidence; yet the inad-
equacy may be so *gross* as to furnish "the most vehement
presumption of fraud." In 2 Pom. Eq. Jur., § 927, the
learned author says: "The doctrine is settled by a *consen-
sus* of decisions and *dicta*, that, even in the absence of all
other circumstances, when the inadequacy of price is so
gross that it shocks the conscience, and furnishes satisfac-
tory and decisive evidence of fraud, it will be sufficient
ground for cancelling a conveyance or contract, whether ex-
ecuted or executory." In such case, the inadequacy of
consideration is not the ground of interposition, but the
fraud, which follows as a conclusion from the degree of
grossness, whereby the conviction arises and abides, though
there be no direct evidence, that the contract was obtained
by imposition, or by some improper means.—*Saltonstall v.
Gordon*, 33 Ala. 149; 2 Lead. Cas. in Eq. 1238.

It is morally certain from the evidence, that Moore was
cognizant of the financial inability of the mortgagor to pay
the mortgage debt, without a sale of the property. Hence

VOL. LXXXII.

[Cleere v. Cleere.]

the alternative agreement, that complainant should bid for the land the stipulated amount. While the nominal consideration was stated at fifteen hundred dollars, there was no absolute agreement to pay that amount. The land was the real consideration in probable and reasonable prospect, the value of which, disconnected from the balance of the tract, according to the evidence disclosed by the record, did not exceed five hundred dollars. Practically, for this consideration the complainant waives his lien on the lands, and releases the sureties from all liability. It may be that, coupling the agreements to assign fifteen hundred dollars of the proceeds, and, if necessary, to take the land at that estimated value, relieves the consideration from inadequacy so gross as to furnish of itself satisfactory and decisive evidence of fraud. But it is not necessary in this case to infer, from the mere inadequacy of the consideration, that the compromise was improperly obtained. When gross inadequacy, though not sufficiently gross to be the basis of an inference of fraud, is combined with incidental circumstances showing bad faith, or undue advantage; when it is coupled with weakness of mind, produced by any cause, with pecuniary distress, or suspicion of fraud; the courts will withhold the benefits of the contract from the offending party, whether claimed affirmatively or defensively. *Lester v. Mahan*, 25 Ala. 444.

The complainant was a man of intemperate habits, which was known to Moore, who invited him to go to Belgreen, where Moore resided, away from his friends and relations. Moore informed the ladies, including his own daughter, at the hotel where he was boarding, that complainant was coming, and that he wanted to make a compromise or trade with him; and requested them to make it pleasant and agreeable to him. Complainant remained at Belgreen, staying at the hotel at which Moore was boarding, about a week, during which time he drank to excess. Moore informed Petree, at whose saloon complainant had drank at times, that he wanted to effect a compromise, and was anxious to get it fixed, and requested Petree not to interfere in the compromise. When complainant went to Petree for advice, it was refused because of this promise. No person seems to have been present at any interviews between Moore and complainant, during his stay at Belgreen, nor is it shown that any interview took place; if any, they were private. On the morning of the last day of his stay, complainant signed and acknowledged the settlement, which was written by Moore, before the clerk of the Circuit Court, who says

[Cleere v. Cleere.]

he was apparently sober. This is the first information given of the compromise having been made.

The evidence makes a case of a deliberate and preconceived plan, by a man of experience and mature years, to induce a young man of dissipated habits, addicted to excessive drinking, to become his guest at the hotel at which he and his family resided, and at a distance from his friends and relations, to bring him under influences that would make him more plastic, and more easily induced to make the compromise, which Moore was anxious to effect; to prevent the advice and interference of others, and to procure his signature to a settlement, when a suitable time and occasion were afforded. These circumstances are not purged of their suspicious character, because complainant may have had mental capacity to contract, nor because he may have been sober after leaving Belgreen, nor because he may have wanted to get the money while living. It is not a question of mental capacity, but good faith, though the probable effects of previous excessive drinking may be considered. Threats of protracted litigation, and a pressing desire and need of money, may have been inducements brought to operate on him. The record is silent as to the circumstances under which he agreed to the compromise, and his knowledge of its contents. The incidental circumstances, combined with gross inadequacy of consideration, which create a conviction of circumvention and undue advantage, call for explanation, and exact of those claiming the benefits of the compromise to show that complainant acted intentionally, with knowledge of its nature and contents, and that no undue advantage was taken of his situation. In the absence of such explanation, the conclusion of fraud follows, and equity will not give effect and operation to the settlement.—*Campbell v. Spencer*, 2 Bin. 129; *McKinney v. Pinckard*, 2 Leigh, 149; *McCormick v. Malin*, 5 Blackf. 509; 2 Pom. Eq. Jur. § 928.

There are other considerations. Neither Moore, nor any of the sureties, paid or obligated themselves to pay complainant anything. No consideration moved from them for their discharge and release. The whole burden of the consideration was attempted to be cast on Anderson's estate, though the sureties were to receive large personal benefits. They claim under and by virtue of a contract made with the personal representative, and purporting only to bind the estate. The successor in the administration of the estate, Moore having died, repudiates the compromise on the record, and refuses to perform it. We shall not consider the authority of Moore, as executor, to bind the estate in the

manner attempted, nor whether a court of equity would enforce the agreement against the estate. We take it to be a rule without exception, that equity will not enforce a contract *in favor* of a party who, not only does not ask its enforcement, but repudiates the contract, and subject the other party to a separate suit and different litigation to get the reciprocal benefit. The succeeding administrator had the same authority to rescind, as the executor had to make the contract. The complainant was authorized to treat it as rescinded, all parties being thereby placed *in statu quo*. The sureties have no independent equity, and claiming under and through the compromise, whatever equity they may have had thereunder, falls with the right and equity of Anderson's estate.

In either aspect, the parties are not entitled to the benefits of the compromise. As the register has reported that there is nothing due from Cleere as *guardian*, which report has been confirmed, no liability rests on the sureties on his bond as such. They can only be made liable for the costs of any unsuccessful litigation instituted by them.

The conclusion reached by the chancellor precludes the consideration of other questions, which may now become material. They are not properly before us. The taxation of the costs will be different on another hearing.

Reversed and remanded.