[Chance v. Chapman.]

# Chance v. Chapman.

### Bill to Cancel Conveyance.

(Decided December 16, 1915.   Rehearing denied February 3; 1915.
· 70 South. 676.)

1. **Deeds; Validity; Inadequacy of Price.**—Inadequacy of price is not within itself sufficient to avoid a conveyance, but the conveyance must be shown to have been tainted with fraud; even then fraud and not inadequacy of price is the ground for equitable relief.

2. **Same; Setting Aside; Evidence.**—The evidence examined and held sufficient to warrant the cancellation of one of two deeds, but not of the other; the grounds alleged being fraud and inadequacy of price.

3. **Cancellation of Instruments; Costs.**—Where respondents received and filed a voidable conveyance which constituted a cloud on complainant's title, and necessitating the filing of a bill to set aside such conveyance, complainant was entitled to cost, although he did not secure the cancellation of other conveyances sought by the bill.

APPEAL from Mobile Law and Equity Court.
Heard before Hon. SAFFOLD BERNEY.
Bill by Dilla Reed, revived in the name of Dilla Chance, as executrix, against John C. Chapman, to cancel certain conveyances as a cloud upon title. From a decree for respondent, complainant appeals. Affirmed in part and in part reversed and rendered, and the cause remanded.

L. H. & E. W. FAITH, for appellant. ERVIN & McALEER, for appellee.

THOMAS, J.—The bill in this cause was filed by Dilla Reed, who died leaving a last will devising all her property to appellant, in whose name a revivor was regularly had, and who now prosecutes this appeal. The purpose of the bill was to cancel four certain conveyances, as a cloud upon complainant's title, on the ground that they had been obtained "by fraud or grossly inadequate consideration."

(1) Mr. Pomeroy thus states the rule of gross inadequacy amounting to fraud (Eq. Jur. vol. 2, § 927) : "Although the actual cases in which a contract or conveyance has been canceled on account of gross inadequacy merely, without other inequitable

incidents, are very few, yet the doctrine is settled, by a consensus of decisions and dicta, that even in the absence of all other circumstances, when the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, it will be a sufficient ground for canceling a conveyance or contract, whether executed or executory. Even then fraud, and not inadequacy of price, is the true and only cause for the interposition of equity and the granting of relief."

The author supports the text by many authorities, including *Gwynne v. Heaton,* 1 Brown Ch. 1, 9, where Lord Thurlow states that the rule attaches in cases involving "an inequality so strong, gross, and manifest that it must be impossible so state it to a man of common sense without producing an exclamation at the inequality of it," and *James v. Morgan,* 1 Lev. 111, where, as an example of exorbitant price, the well-known "horseshoe case," in which a party "stipulated to pay a sum resulting from doubling the amount of every nail in the horse shoes," is referred to. See, also, 1 Story, Eq. § 246.

In *Judge v. Wilkins,* 19 Ala. 771, the Chief Justice said: "I follow the language of the authorities in saying that inadequacy of price, or other inequality in the bargain, is not within itself a sufficient ground to avoid a contract in a court of equity, on the ground of fraud; for courts of equity, as well as courts of law, must act upon the ground that every person who is not under some legal disability may dispose of his property in such manner and upon such terms as he sees fit; and whether his bargains are discreet or not, profitable or unprofitable, are considerations, not for courts of justice, but for the party himself. —1 Story's Eq. § 244; *Low v. Barchard,* 8 Ves. 133; *Griffith v. Spratley,* 1 Coxe's Ch. 383; *Collier v. Brown,* Id., 429; *Osgood v. Franklin,* 2 Johns. h. [N. Y.] 1-23 [7 Am. Dec. 513], and cases there cited. It is, however, said in many cases that there may be such gross inadequacy of price as to demonstrate imposition or undue influence, and in such cases a court of equity ought to interfere; but then the inadequacy should be so gross as to shock the conscience of the chancellor, and amount itself to evidence of fraud."—*Cleere v. Cleere,* 82 Ala. 581, 3 South. 107, 60 Am. Rep. 750; *Mahone v. Williams,* 39 Ala. 202; *Saltonstall et al. v. Gordon,* 33 Ala. 149.

The conveyance is really assailed rather because of the inadequacy of the consideration than because of fraud or concealment,

or a misrepresentation of material facts upon the part of the appellee. It has been declared by this court that inadequacy of consideration is not, of itself, and aside from the unfavorable inferences to which it may give rise, ground for avoiding the contract.—*Juzan et al. v. Toulmin,* 9 Ala. 662, 44 Am. Dec. 448; *Judge v. Wilkins, supra; Williams v. Powell,* 66 Ala. 20, 41 Am. Rep. 742.

In *Malone v. Kelley et al.,* 54 Ala. 532, 538, Chief Justice Brickell said: "When no fiduciary relation exists between the parties, and they are of legal capacity, however improvident or disadvantageous the contract may appear, though marked by folly or indiscretion, it must stand until the party seeking to escape its obligation clearly proves that it was the result of fraud, mistake, or surprise, or undue influence practiced upon him."—*Bolling v. Munchus,* 65 Ala. 65 Ala. 558; *Judge v. Wilkins, surpra.*

(2) If we look to the facts of this case, we think that the grantors were influenced, in the sale of the 70 acres in section 12, by reasons satisfactory to themselves, and not alone by the consideration in money.

Alfred Reed and his wife were childless and old, but they were not shown to have been infirm at the time of the execution of the conveyance. They had theretofore sold a designated 10-acre tract out of the north half of the northeast quarter of section 12, township 7 south, range 4 west, and owned and occupied as a homestead a house and 10 acres in the south half of section 1, township 7 south, range 4 west. The State Land Company was asserting a lien upon, or title to, all of said north half of the northeast quarter of section 12, and to the said 10-acre homestead tract in section 1. It was but natural for the Reeds to desire to protect their homestead in section 1, as well as their warranties to their purchasers of the 10 acres sold by them off of the north half of the northeast quarter of said section 12. Their 70-acre remainder of this latter tract does not appear to have been especially necessary for their comfort and support.

The agent of the land company suggested the sale of a portion of the lands, to discharge the claim, or to secure the title of his company. Acting on this suggestion, one of the Reeds proposed to the Sayres that, if they would pay this tax claim, the Reeds would convey to them the other 70 acres in section 12.

This proposition, when declined, was renewed to Chapman, who, after inspection, purchased the 70 acres in question.

We find no evidence of a confidential relation, nor of deceit, misrepresentation, or mistake, in this purchase of the remaining seventy acres, nor of duress or artifice to reduce the price. The real consideration moving to the grantors was satisfaction of the demands of the land company as to the north half of the northeast quarter of said section 12, and as to the homestead 10-acre tract in section 1. After the deed was executed the grantors discussed with third parties the transaction, in terms that evinced their satisfaction and relief at a consummation that cleared the excepted tract in section 12 and the homestead 10-acre tract in section 1 of the land company's claim; and they also allowed Chapman to take and retain the possession of the 70 acres.

Alfred Reed lived about two years thereafter, and he is not shown to have expressed dissatisfaction as to the sale, nor to have claimed that any fraud was practiced on him in the procurement of the conveyance. His wife, Dilla, is not shown to have been dissatisfied therewith until about two years after the death of her husband.

In *Yarbrough et al. v. Harris*, 168 Ala. 332, 52 South. 916, Ann. Cas. 1912A, 702, the court declared that there was not a "single fact" to show that the transaction was fair and just but that, to the contrary, every circumstance showed it to have been "unfair and oppressive—oppressive of the ignorant, weak, and confiding by the intelligent, strong, and dominating." In that case the grantee was anxious to buy the property of an old negro, and with the aid of an attorney he sought and induced her to execute a conveyance to land worth from $500 to $1,900. The deed recited the consideration of $250, instead of that really paid her, $25. The evidence tended to show that confidential relations contributed to the procurement of the conveyance. No such state of facts is presented by this record. From a careful consideration of the evidence herein we are of the opinion that the true intention of the parties was to purchase and sell the 70 acres in section 12, and thereby to provide the moneys necessary to clear from the tax title of the State Land Company the 10 acres in section 12 theretofore conveyed by the Reeds to McNair, Moseley, and others, and likewise the Reeds' 10-acre homestead tract in section 1.

From what we have said it necessarily follows that there was no error in the refusal to cancel the deed to the 70 acres in the north half of the northeast quarter of section 12, township 7 south, range 4 west, specifically described in the deed from Alfred and Dilla Reed to Chapman of date May 4, 1910, recorded in Deed Book 145, N. S., pages 285, 286, in the office of the judge of probate of Mobile county, Ala., but that the court below erred in refusing to grant appellant relief as to the cancellation of that certain deed, attached as Exhibit C to the deposition of John C. Chapman purporting to convey the homestead tract of 10 acres in the east half of the southwest quarter of section 1, township 7 south, range 4 west, which said deed is recorded in Deed Book 145, N. S., pages 279, 280, in the office of the judge of probate of Mobile county, Ala., and further judgment is hereby rendered divesting out of the said John C. Chapman all right, title, interest, and claim in and to said tract in the east half of the southwest quarter of section 1, township 7 south, range 4 west, occupied as a homestead by Alfred and Dilla Reed when conveyed or sought to be conveyed to the said John C. Chapman by C. H. Myers and wife, Sadie Myers, on the 10th day of May, 1910, which said conveyance is recorded in Record Book 142, N. S., pages 391, 392, in the office of the judge of probate in said state and county.

The cause is hereby remanded to the law and equity court of Mobile, to the end that a proper order and decree may be entered therein directing the register to indorse on the margin of the records of said deeds, in the probate office of Mobile county, Ala., the cancellation of said conveyances as a cloud on complainant's title, as hereinabove indicated.

(3) It further results from what we have said that the taking and filing for record by John C. Chapman of such conveyance to the said 10-acre homestead tract in section 1 created a cloud on the title of the said Alfred and Dilla Reed and their successors in title such as necessitated the filing of this bill; and it is the order and judgment of this court that the said appellee be, and he is hereby, taxed with the cost of this proceeding in this court and in the lower court.

The decree of the law and equity court of Mobile in this cause is affirmed in part, and in part reversed and rendered, and the cause is remanded.

Affirmed in part, and in part reversed and rendered, and remanded.

ANDERSON, MAYFIELD and SOMERVILLE, JJ., concur.