199 So. 870

**LANE et al. v. LANE et al.**

**4 Div. 139.**

Supreme Court of Alabama.

Dec. 5, 1940.

Rehearing Denied Jan. 16, 1941.

Farmer, Merrill & Harrison, of Dothan, for appellees.

F. M. Gaines and L. A. Farmer, both of Dothan, for appellants.

FOSTER, Justice.

The main question on this appeal relates to the extent of the liability of the surety on a guardian's bond, who was also administrator of the deceased parent of the ward.

I. T. Lane was, on the same day, appointed administrator of the estate of Amanda Lane, his deceased wife who had been killed in a railroad accident in Florida, and also appointed guardian of their four minor children who were also injured in the same accident. As administrator he executed bond in the penal sum of $100. On the same day he, as administrator, collected from the Louisville and Nashville Railroad Company $10,000 for the death of his wife, out of which he paid an attorney's fee of $1,000, and closed a trade for the purchase of two hundred and forty acres of land for $12,000, taking the title in his own name, and executing a mortgage for the balance. Later he borrowed money on it from the Federal Land Bank, and finally lost it on account of such indebtedness.

On February 12, 1938, a final settlement of his administration was made under section 5917, Code, in the Probate Court of Houston County, Alabama, in which the administration began. On said settlement a decree was rendered against I. T. Lane, individually and as administrator for the sum of $1,526.25 in favor of the special guardian for each of the children, though one of them had reached the full age of twenty-one years.

The said I. T. Lane, as guardian, did on January 4, 1924, collect $3,750 for injuries to the minor children in unequal sums. This, less some expenses, he invested in land in the name of the children.

On August 1, 1939, a settlement was made by decree of the probate court of the guardianship from which this appeal was taken.

The decree on settlement charged the guardian and the sureties on his bond as such with $1,526.25 as a liability to each of the four children, on account of the decree of settlement of the administration in which that amount was adjudged to be due each of them by I. T. Lane, individually and as administrator of said estate. His liability as guardian on that basis is here brought into question on cross-appeal by him and the surety on his appeal bond. It seems to be the primary question of law here presented.

The evidence shows that when the settlement of the administration occurred, and at all times since then, I. T. Lane has been insolvent and has had no property or effects out of which any of said amount could be collected.

The solution to the inquiry hinges upon the liability of a guardian's bond for funds which he never received as guardian, but which he did receive as administrator of a decedent of whom his ward was an heir and distributee, and in which he was ordered as administrator to pay an amount to or for such ward.

It is argued on behalf of the ward that section 5917, Code, is controlling, and serves to fasten liability on the guardian under such circumstances so as to bind his bond as such. That was the judgment and decree of the probate court. But in making the settlement it was thought on behalf of the minors that certain credits

were improperly allowed; hence this appeal by them, in which the guardian, and the surety on his bond who had been made a party in the probate court, assign cross-errors.

Prior to the enactment of section 5917, Code, the probate court had no jurisdiction to make decree of final settlement of the administration of an estate when the administrator was also guardian of a minor heir and distributee of said estate. Carswell v. Spencer, 44 Ala. 204; Tankersly v. Pettis, 61 Ala. 354; Hays v. Cockrell, 41 Ala. 75; Cleere v. Cleere, 82 Ala. 581, 3 So. 107, 60 Am.Rep. 750; Vaughan v. Suggs, 82 Ala. 357, 2 So. 32; Alexander v. Alexander, 70 Ala. 212; Modawell v. Hudson, 80 Ala. 265. The chief purpose of its enactment, we assume, was to change that rule and give such jurisdiction to the probate court. In so doing, and upon a decree on final settlement against the administrator for the use of the ward that jurisdiction was provided for, and then in the Code section the following appears, "and thereafter the executor or administrator, in the capacity of guardian, shall be accountable for such decree."

That feature of the Act has never been construed. But considering the purpose of it, we do not think it was intended to change the law fixing the liability of the person occupying the dual relation and the respective liability of his two bonds as such. When the administrator was declared thereafter to be accountable for the decree as guardian, we think it means that he should be accountable on principles of law which fix his liability as guardian to account. He becomes accountable to the extent of his liability, not when under the circumstances there is no liability. He can be held accountable so as to subject him to such legal duty as the law imposes. If there is no legal duty, there is no liability, though he is accountable to perform all of the requirements of the law. If there is no such requirement his accountability does not create one. Such we believe to be the proper interpretation of this feature of the statute.

We therefore determine the liability of the guardian's bond now sought to be charged on principles which have not been changed by that statute. Some of those questions have been settled by the Alabama cases. For this Court recognizes the general rule that under such circumstances, nothing else appearing, the guardian as such is not liable for assets which came into his possession as administrator until they are separated and distinguished from other assets of the estate, either actually or upon some established legal theory Davis v. Davis, 10 Ala. 299; Hutton v. Williams, 60 Ala. 107; McPhillips v. Mc-Grath, 117 Ala. 549, 562, 23 So. 721, 724; Miles v. Meade, 191 Ala. 80, 67 So. 1012.

But the general rule also is that when a final settlement is made of the administration and an account ascertained and declared in the decree on settlement as due the guardian, who is also the administrator, or when for some reason no act was necessary to transfer to his capacity as guardian the liability incurred as administrator, it is transferred by operation of law. Hutton v. Williams, supra. See, also, 28 Corpus Juris 1284.

But there is a limitation on the rule by which the liability is transferred by operation of law when final settlement of the administration is made, recognized by the authorities, and it seems sound to us, and is here applicable. The theory is that the guardian's bond is only liable for the acts and omissions of the guardian as such, not in other capacities. There must be some misfeasance or malfeasance as such guardian, not as administrator.

When the court finds and decrees that as administrator he owes himself as guardian an amount, which should be paid, but he does not collect it or bring it into the guardianship hopper, he, as guardian, is prima facie chargeable with a misfeasance, for which the guardian's bond must stand responsible. But this presupposes that as guardian he can collect it from himself as administrator. But the rule also seems to be well established "that where it appears that no property or fund (subject) to transfer existed at the time of the supposed transfer, and the fiduciary was insolvent and unable to restore (it), no transfer to him as guardian can be regarded as having taken place. 25 Amer. Jur. 117, section 191, notes 15 and 16; 111 A.L.R. 269, 270.

The converse is true, and if he is solvent, or has assets subject to be appropriated, it is his duty as guardian, since he has the ability under those circumstances, to make the collection and bring the fund into guardianship, and it will be treated as done. 111 A.L.R. 271. The citation notes many cases thus holding. Dumas v. Hollins, 229 Ala. 644, 154 So. 781.

The estate of decedent consisted of an amount of damages resulting for her death unlawfully caused by the Louisville and Nashville Railroad Company, which occurred in Florida, and its distribution is controlled by the statutes of that state which give the right of action unknown to the common law, and they have not been pleaded and proven in this case. Dawson v. Dawson, 224 Ala. 13, 138 So. 414. So that we do not know whether such statute is as our section 5696, Code, in which the only duty of the administrator is to collect and distribute the fund to those entitled to it. Fischer v. Pope, 229 Ala. 170, 155 So. 579. We are not treating this situation as one where the recovery is under section 5696, Code. We may observe, however, that if the recovery or liability be under the Florida statute, similar in legal effect to our Code section, supra, no act was necessary to transfer this fund to his capacity as guardian, —it was transferred by operation of law.

In this case on that theory there was no duty to transfer this fund, or any of it, from the administration to the guardianship until a settlement of the administration was made in the probate court, or other court with jurisdiction and an amount ascertained as due to be transferred to the guardianship. When that event occurred the fund was not in being and the administrator was insolvent and had no available property, and his bond as such was only liable for $100, which was paid and accounted for. So that at that time, no ability to make it available for the guardianship existed, and there has been no change in that status since then. There was therefore no breach of the guardian's bond in not making this fund available for distribution or disbursement for the wards.

The probate court decreed that the investment and expenses paid in respect to the $3,750, which the guardian of the minors received on their account, showed nothing for which he should be held accountable. Land was purchased and title taken in their name as authorized by section 8168, Code.

A discussion of the evidence is unnecessary. It was taken orally before the probate judge who rendered the decree from which this appeal was taken. See Farmer v. Coleman, 231 Ala. 527, 165 So. 778.

As a result of our conclusion the sum of $1,526.25 should not have been charged the guardian for each of the wards. This is the only amount which was charged to him as such guardian. If that is eliminated, as we think it should be, there is no occasion to inquire into the correctness of the allowance made for their support and maintenance (but see Law v. Bush, 239 Ala. 612, 195 So. 885), or of other items of credit allowed by the court, and to which the wards object on this appeal as shown by their assignments of error.

The result is that we think the decree of the probate court should be reversed on the cross-assignments of error, and therefore affirmed on the main appeal. We see no useful purpose to be accomplished by a remandment of the cause, unless appellants make a showing that the homicide statute of Florida is similar to our section 5696, Code, in respects here material. It was tried by the judge without a jury, and on the evidence we think that the guardian on final settlement and accounting is not due to pay anything to the minors who were his wards, and that he and the surety on his bond should be discharged from further liability as guardian. Of course this does not affect the decree against him as administrator.

A decree will be here rendered as above indicated.

Affirmed on main appeal. Reversed and rendered on cross-assignments of error.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.

### On Rehearing.

FOSTER, Justice.

In rendering the decree in this case, which we thought should have been rendered, we left the door open to appellants in the main appeal to bring to our attention indirectly the homicide statutes and laws of Florida, so that if they could show that under them the recovery by the administrator should go at once to the distributees, as under our statute, we might remand the cause to give them an opportunity on another trial to prove the Florida law in that respect.

Appellants, in response insist that our section 5696, Code, has application rather than the Florida statute. They cite the case of O'Connor v. Root, 130 Iowa 553, 107 N.W. 608. That case does not support their theory. One question there discussed was whether damages recover-

able in Michigan were subject to debts of the estate in an administration in Iowa by an administrator appointed in the latter state under a law of that state making such sum exempt from debts, though not so in Michigan. The Iowa court pointed out the fact that moneys collected under a foreign statute are payable to the persons there named unaffected by their residence, citing In re Estate of Coe, 130 Iowa 307, 106 N.W. 743, 4 L.R.A.,N.S., 814, 114 Am.St.Rep. 416, 8 Ann.Cas. 148. And that the foreign state creating such statutory right could designate the person or persons who may have its benefit enforceable in Iowa. But that rule did not serve to make a fund, whose benefits are not thus designated, to be subject to the payment of debts in another state to which it was carried by the administrator appointed in the latter state, when the law of that state exempted the money from the payment of debts, regardless of where it was received, and although it was not so exempted in the foreign state under whose law it was created. And held that because the law of the foreign state (Michigan) provided that the recovery by the administrator should be distributed to the persons who were his distributees, the obligation was not to the estate but to those persons standing in the relation of distributees. So it was held that the damages collected must be disposed of under the Michigan law to such persons. That is our understanding of the law as we undertook to apply it in this case in the former opinion. See Louisville & Nashville R. R. Co. v. Williams, 113 Ala. 402, 21 So. 938.

Counsel for appellant cite and copy section 7048, Comp.Gen. Laws of Florida, here material. The cause of action for a wrongful homicide is under it, first, to the widow or husband; if none, then to the minor children; if none, then to other dependents; if none, then to an executor or administrator. A recovery by such executor or administrator is not directly nor indirectly for the benefit of another, and no provision is made for its exemption from the payment of debts.

The Supreme Court of Florida, construing that statute in Marianna & B. R. Co. v. May, 83 Fla. 524, 91 So. 553, 555, held that when an administrator has a right to recover, he "is limited to the present value of an estate which the proofs show the decedent may reasonably have been expected to earn and save had he lived."

But we understand the statute to mean that an administrator has no claim if decedent left a husband or minor children or dependents. That if she left a husband, as she did, the sole right of recovery was vested in him to recover "such damages as [he] * * * sustained by reason of the death." So that neither the minors nor the administrator had any rights in the matter. There was a settlement with the husband who was the administrator. Whatever may have been the rights of the husband personally to the fund so received as against the claims of creditors, if any, it seems clear that under that statute the minors were not beneficiaries.

The amount of damages to the widow or husband (Dina v. Seaboard A. L. Ry. Co., 90 Fla. 558, 106 So. 416) and to the minors (Triay v. Seals, 92 Fla. 310, 109 So. 427; Pidcock-Jones Co. v. Watson, 141 Fla. 376, 193 So. 305) is based on different elements from those on which the amount to an administrator is based. Marianna & B. R. Co. v. May, supra. Punitive damages are not recoverable by any of them. Florida East Coast Ry. Co. v. McRoberts, 111 Fla. 278, 149 So. 631, 94 A.L.R. 376.

So that we have a case where a settlement was made with an administrator for injuries causing death, when the administrator under the statute had no cause of action, but when the individual who was by chance also the administrator is the only one who had a cause of action. Such a settlement probably estopped him individually, and the effect was that the administrator held the fund so received either for him personally, or as assets of the estate subject to administration as such.

We have treated it as in the latter capacity in which the fund should be made available. But under the laws of Florida, as we understand them, the administrator did not receive it as agent or trustee for the next of kin, the husband and minors, certainly not as trustee for the minors, who had no special interest by statute, since the decedent left a husband living.

It merely becomes the duty of the courts of this State to recognize and enforce the laws of the state by which the ownership of property is created and controlled. If it comes into this State as an asset of the estate, not in trust for any beneficiary, this State will not create a trust and beneficiary for it. Its owner-

ship as it comes here must be enforced as it was under the laws of Florida where it was created.

We have made this cursory investigation of the laws of Florida as a basis for an exercise of our discretion to determine whether. the cause should be remanded to enable the laws of Florida to be introduced in evidence. We invited such collateral discussion for that purpose.

It has not been made to appear to us that under that law the children of decedent are beneficiaries in such a claim where the decedent left a husband living. As we interpret that law, the aspect most favorable to appellants is to treat the amount of the recovery as assets of the estate of decedent for distribution as other such property.

We therefore are still of the opinion that it would serve no useful purpose to remand the cause.

Application for rehearing overruled.