# State, *ex rel.* Turner *v.* Henderson, Governor.

### Mandamus.

(Decided February 2, 1917.   74 South. 344.)

1. **Mandamus; Persons Subject; Governor.**—The courts can issue mandamus, directing the Governor to do a purely ministerial act, though they have no means to compel obedience, since the court is a supreme authority in the determination of legal questions, and it will not be assumed that the Governor will refuse to execute the law as declared by the courts.

2. **States; Fiscal Management; "Appropriation;" Indefiniteness.**—Acts 1915, p. 719, authorizing the Attorney General to employ with the approval of the Governor necessary counselors and attorneys, section 8 of which ap-

[State, ex rel. Turner v. Henderson, Governor.]

propriates money sufficient to meet the expenses incurred under the act, is a valid appropriation within Const. 1901, § 72, providing that no money shall be paid out of the treasury except upon "appropriation" made by law, though no definite sum or maximum which cannot be exceeded was thereby fixed.

3. **Mandamus; Subjects of Relief; Ministerial Acts.**—Under Acts of 1915, p. 720, § 4, authorizing the Attorney General, whenever in his opinion the public interest requires it, to employ, with the approval of the Governor, attorneys and counselors, who shall be paid upon the warrant of the auditor drawn on the certificate of the Attorney General, approved by the Governor, that their services were actually rendered, the approval by the Governor of the Attorney General's certificate that attorney whose employment he had approved had rendered the services and was entitled to the agreed compensation is a ministerial act, the performance of which can be compelled by mandamus; the Governor's discretion having been exercised when the employment was approved.

APPEAL from Montgomery Circuit Court.

Heard before Hon. LEON McCORD.

Petition by the State on the relation of Perry W. Turner against Charles Henderson as Governor of the State for mandamus to require the Governor to approve a certificate for services. From a judgment sustaining the demurrers to the petition relator appeals. Reversed and remanded.

W. L. MARTIN, Attorney General, LAWRENCE E. BROWN, P. W. TURNER and HARWELL G. DAVIS, Assistant Attorney Generals, for appellant. RUSHTON, WILLIAMS & CRENSHAW and BALL & SAMFORD for appellee.

SAYRE, J.—This appeal was submitted for decision under rule 46 (178 Ala. xix, 65 South. vii), and has been considered by the court in accordance with that rule.

This is a petition by the State, on the relation of Perry W. Turner, for a writ of mandamus, commanding the Governor to approve the Attorney General's certificate to the effect that relator had rendered services as Special Assistant Attorney General for the month ending September 30, 1916, that such services were necessary for the efficient conduct of the public business, and could not be promptly performed by the officers regularly provided by law, and that thereupon relator was entitled to be paid from the state treasury the sum of $250. The petition shows that on December 18, 1915, the Attorney General, acting for and on behalf of the state, had entered into a contract with relator by the terms of which relator had agreed to devote his

time, as Special Assistant Attorney General, to the performance of such duties as might be assigned to him by the Attorney General for the period beginning January 1, 1916, and ending January 20, 1919, in consideration whereof the state had agreed to pay him the sum of $3,000 per annum in monthly installments. In the court below a demurrer was sustained to the petition, and petitioner, declining to plead further, took this appeal.

(1) Of the several questions raised by the appeal we consider first that which involves the availability of the remedy sought in the circumstances of this case. It is hardly necessary to say that with one accord the courts deny their power to coerce the Governor to perform any act calling for the exercise of judgment or discretion. As to the question whether the Governor is amenable to the writ in case it is sought to compel his performance of a purely ministerial duty, the courts are not agreed. In a good number of the states it is held that mandamus will never issue to the chief executive to compel the performance of any duty imposed upon him by law, whether ministerial or otherwise. In a note to the case of *State of Wyoming, ex rel. Irvine v. Brooks, Governor,* reported in 6 L. R. A. (N. S.) 750, where the cases are collected and reviewed, the editor, after noting the irreconcilable conflict of authority upon the question of the judicial control of the chief executive in regard to purely ministerial duties, says: "But the reason, if not the weight, of authority, would seem to be   *   *   *   .that, as to duties of this character, the general principle of allowing relief against ministerial officers should apply, and that the mere fact that it is the Governor against whom the relief is sought should not deter the courts from the exercise of their jurisdiction, since the authority of the courts is supreme in the determination of all legal questions judicially submitted to them within their jurisdiction, and no one is exempted from the operation of the law, and the duty of faithfully executing the laws is solemnly enjoined upon the Governor by his oath of office; and, if the relief sought were refused, those persons whose rights have been invaded by executive neglect or refusal to act would very often be altogether without redress."

This court, in *T. C. R. R. Co. v. Moore,* 36 Ala. 371, held that mandamus would lie to compel the Governor to draw his warrant in favor of the relator for a sum of money lent to it by an act of

the Legislature, the court being of the opinion that the Governor, as well as any other officer, was amenable to the writ. This conclusion was questioned by Judge BYRD in *Chisholm v. Mc-Gehee,* 41 Ala. 197, who doubted "whether this court has the right or power to enforce by mandamus any duty imposed upon a Governor of the state by law," citing cases holding that the court had no such power. In *State, ex rel. Plock v. Cobb,* 64 Ala. 127, BRICKELL, C. J., considered it "a question not free from difficulty, and embarrassed by a conflict of authority, whether the Governor, the head of the executive department * * * of the state, can be controlled by the judicial department, in the performance of duties devolved on him in his official capacity." He referred to the decision in *T. & C. R. R. Co. v. Moore, supra,* but dismissed the subject with the observation that "whether this case falls within the principle thus announced, or whether the principle itself is sound, and can be safely acted on, are questions which have not been argued by counsel, and in reference to which we express no opinion." Again in *State, ex rel. Higdon v. Jelks,* 138 Ala. 115, 35 South. 60, the court pointedly "declined to express any opinion as to the soundness of the principle in *Moore's Case.*"

Notwithstanding the shadow that may have been thrown over the authority of *Moore's Case* by subsequent references thereto, the court, now considering that it has jurisdiction, and, having jurisdiction, is under duty to declare the law of this case, apprehending no disturbance or impairment of the independence of the separate powers assigned to the different departments of government, nor permitting the intrusion of a doubt that the Governor will faithfully execute the law so declared, "notwithstanding it would lack the power to enforce its judgment, should he choose to ignore its mandate, prefers to follow the authority of that case, and, without further citation of authorities or elaboration of the principle involved, refers to the quotation from the note to *Wyoming, ex rel. Isvine v. Brooks, supra,* for a sufficient statement of the rationale of its conclusion.

(2) In the next place we consider the objection to the writ in this case, taken on the ground that there has been no lawful appropriation of money for the purpose in question.

Section 72 of the Constitution provides that: "No money shall be paid out of the treasury except upon appropriations

[State, ex rel. Turner v. Henderson, Governor.]

made by law, and on warrant drawn by the proper officer in pursuance thereof."

Relator claims relief according to the provisions of the act entitled an act "To further prescribe the authority and duties of the attorney general," etc., approved September 22, 1915 (Gen. Acts 1915, p. 719 et seq.), section 4 of which in pertinent part reads as follows: "That whenever in his opinion the public interest requires it, by reason of the volume of the work in his office and in the importance of the business and the interest of the state in the matter, whether civil or criminal, the Attorney General, with the approval of the Governor, or the Governor himself, may retain and employ, in the name of the state of Alabama, such attorneys and counselors at law as he thinks necessary to the proper conduct of the public business, and shall stipulate in writing with such attorneys and counselors the amount of their compensation to be approved by the Governor before employing them. * * * The special assistants to the Attorney General herein authorized shall be paid upon the warrant of the auditor drawn upon the certificate of the Attorney General, approved by the Governor, that their services were actually rendered," etc.

Section 8 of the same act read as follows: "There is hereby appropriated out of the state treasury a sum of money sufficient to meet the expenses incurred under the provisions of this act."

Appellee contends that section 8 of the act, supra, cannot be allowed to operate as an appropriation, for that it sets apart no maximum or otherwise ascertained amount to meet the expenses that may be incurred under authority of the act; that, quoting from State, ex rel. Davis v. Eggers, as reported in 29 Nev. 469, 91 Pac. 819, 16 L. R. A. (N. S.) 630:

"As all appropriations must be within the legislative will, it is essential to have the amount of the appropriation, or the maximum sum from which the expenses could be paid, stated. This legislative power cannot be delegated nor left to the recipient to command from the state treasury sums to any unlimited amount for which he might file claims. True, the exact amount of these expenses cannot be ascertained nor fixed by the Legislature when they have not yet been incurred, but it is usual and necessary to fix a maximum * * * specifying the amount above which they cannot be allowed."

[State, ex rel. Turner v. Henderson, Governor.]

Here again the cases are in conflict. The wisdom of the rule announced in the case supra, i. e., that to allow any person or officer to draw upon the treasury for unlimited amounts in effect delegates to that person or officer the power of appropriating the public money, so commends itself to the reason that, were the question altogether a new one in this state, we might feel inclined to appellee's view. But the question is not entirely new. This provision has been common to all the Constitutions of this state. In the Constitutions of 1819, and 1861 it appeared under the head "General Provisions." In the later instruments it has appeared under the head of "Legislative Department." In *Smith v. Speed,* 50 Ala. 276, where may be found a brief statement of its historical development, it was said of the provision upon which appellee now relies that: "In the light of its history, this constittuional provision is conservative, not restrictive or prohibitory of the legislative power over the public revenue," and in most of the older states, where any question has been raised concerning its meaning and effect, it has been held not to prohibit indefinite appropriations such as that of the act under consideration, while the decisions to the contrary come from the newer western states. Now the diligence of counsel for appellant has brought to light many examples of appropriations made in this way from the beginning of the state's legislative history down to the date hereof, and it may be assumed, nothing appearing to the contrary, that from time to time as occasion arose during all these years these indefinite appropriations have been acted upon by the executive departments of the government, thus in one way or the other involving a long line of the state's legislative and executive officials in a necessarily implied approval of that interpretation of the provision which would sustain the act now in question, and providing a practical exposition of its meaning too strong and obstinate to be now shaken or controlled except upon a clear conviction of error.—*Stuart v. Laird,* 1 Cranch 299, 2 L. Ed. 115; *Cohens v. Virginia,* 6 Wheat. 264, 5 L. Ed. 257; *Wetmore v. State,* 55 Ala. 198. However loose, unwise, or dangerous this mode of appropriating the public money may be deemed, the court, in view of the considerations to which we have adverted, is unwilling to hold that it is prohibited by the Constitution. If the statute be as mischievous in its tendencies as appellee's brief would indicate, the answer, sufficient for us, is that the responsibility therefor rests upon the Legislature, not upon the court.

(3) It is further contended by appellee that the payment sought is made discretionary with the Governor and, for that reason, cannot be compelled by mandamus. It appears, however, that the Governor gave his written approval to the contract between the relator and the Attorney General at the time it was entered into, and that the relator has fully performed the services he then agreed to perform. At least there is no denial of the truth of the Attorney General's certificate, nor any indication that the Governor's refusal was put upon any such ground. Upon these facts the court holds that the Governor's discretion was exercised in this case at the time when he gave his approval to the contract, and that his required approval of the Attorney General's certificate remains to be performed as an act merely . ministerial. The judgment of the circuit court, sustaining the demurrer to relator's petition, is therefore reversed, and the cause is remanded, to the end that, if necessary, it may proceed to a final judgment.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.