71 So.2d 39

## HUDDLESTON

v.

### HUMBLE OIL & REFINING CO. et al.

3 Div. 665.

Supreme Court of Alabama.

March 4, 1954.

Aubrey M. Cates, Jr., Montgomery, for appellant.

Ball & Ball, Montgomery, for Gulf Refining Co.

McCorvey, Turner, Rogers, Johnstone & Adams, Mobile, for Humble Oil & Refining Co.

Si Garrett, Atty. Gen., A. J. Harris and Wm. N. McQueen, Asst. Attys. Gen., for Governor and Director of Conservation.

PER CURIAM.

This case comes to us on appeal by complainant in an equity suit in which the court sustained a demurrer to his bill.

The bill of complaint sought an injunction against Humble Oil and Refining Company, a corporation, Gulf Refining Company, a corporation, Earl M. McGowin, as director of the department of conservation, and Gordon Persons, as Governor of Alabama, enjoining and restraining them from (a) considering the bids of Humble and Gulf jointly made for leases for oil and gas and other minerals in certain described lands of the state, being located in two tracts in the bed of Conecuh River as a navigable stream at that loca-

tion, and (b) from entering into certain proposed leases with those corporations of said tracts of land for oil and gas and other minerals; and (c) a mandatory injunction directed to Earl M. McGowin, as director of conservation, commanding him to accept each of complainant's bids to lease said tracts separately and to execute each of the leases proposed by complainant; (d) a mandatory injunction directed to Gordon Persons, as Governor, commanding him to approve each of said leases of complainant; and, further, a declaration (1) that the Humble and Gulf bids were submitted too late to be considered as legal bids, and that their proposals to lease are void as violating section 99 of the Constitution; (2) that complainant's bids constitute the best bids for said leases, and (3) that Earl M. McGowin, as such director, and Gordon Persons, as Governor, must approve each of said proposed leases submitted by complainant, and for general relief.

It is apparent that the various special prayers for relief are for the purpose of emphasizing the contention that (1) complainant's bids are the only ones legally submitted; (2) in the alternative, that if the joint bids of Humble and Gulf were legally submitted, those of complainant were higher and better and should have been accepted because there were no other bids attempted to be offered.

We will consider the contentions in the above order. The first two aspects of the relief sought (a) and (b), *supra*, are controlled by the same principles of law and may be treated together. That is, that the bids of Humble and Gulf should not be accepted and approved for the reasons, (first) that they were received too late to be considered and approved, and (second) that they are not higher and better than the bids offered by complainant which were submitted in due time. As to the time of their submission, it is contended that it is controlled by a certain rule and regulation made by the director of conservation. So far as here material, the substance of the rule is that when any person desires to lease for oil or gas any state land under the jurisdiction of the department of conservation, he shall make application to the director of conservation, giving certain details as to description, etc. When such application is made, an advertisement of it shall be published giving the date, not less than sixty days, on which bids shall be received and opened for the land so advertised. The advertisement shall contain a description of the land and the time when bids will be received and the time when such bids will be opened, and other details not necessary here to mention. The bids shall be opened publicly in the office of the director, who may reject any and all bids. Bids shall show the amount of bonus, annual rental and royalty offered. Royalty shall not be less than one-eighth of the oil and gas produced and saved.

On February 20, 1952 McGowin, as such director, caused to be advertised a notice which invited sealed bids for the leasing of two certain tracts of land in Escambia County, being the bed and bottom of Conecuh River, one for 305 acres and another for 315 acres. The leases to be for oil and gas purposes, and the bids to be received by said director "through the 20th day of April, 1952, with said bids to be opened in the office of the director of conservation at 11:00 A. M. on the 21st day of April 1952." Other details are unnecessary to rehearse.

The bill alleges that on April 18, 1952 the complainant delivered to the director at his office two sealed bids, conforming to the notice and rule and regulation, *supra*. Both leases are for five years. For tract No. 1, 305 acres, the offer was a cash bonus of $305 and an annual rental of $305, with a royalty of one-fifth of the oil and gas separately produced and saved. For tract No. 2, 315 acres, the offer was a cash bonus of $315 and an annual rental of $315, with a royalty of one-fifth of the oil and gas separately produced and saved.

The respondents Humble and Gulf jointly made a bid for a five year lease. For tract No. 1, 305 acres, the bid was a cash bonus of $3050, and an annual rental of $305, and a royalty of one-eighth of the oil and gas separately produced and saved.

For tract No. 2, 315 acres, the bid was a cash bonus of $3150, and an annual rental of $315 and a royalty of one-eighth of the oil and gas separately produced and saved.

The bill of complaint alleges that at 11:00 a. m., April 21, 1952, there were no other bids. Thereupon McGowin announced that he would award a lease for each tract to Humble and Gulf. But said bids of Humble and Gulf "were accepted (meaning received for consideration) by respondent McGowin at some time after April 20, 1952". That he, with the approval of the Governor, proposes to execute leases to Humble and Gulf in accordance with their bids, though said bids were received after April 20, 1952, notwithstanding complainant submitted the only bid within the time announced in the advertisement when such bids would be received, and that he (complainant) was ready, able and willing to execute leases according to his bids. The bill alleges that to accept the bids of Humble and Gulf would violate section 99 of the Constitution, in that it is a disposal of lands of the state on terms more favorable to corporations than to individuals, and would violate the rule and regulation authorizing the director to receive bids at the time named in the advertisement, and that the bids of Humble and Gulf were not received within that time.

The argument as to section 99, supra, as we understand the brief in that aspect, is that in receiving and considering the bids of Humble and Gulf on the 21st the director extended more favorable terms to them than to complainant. But section 99 is that the price to a corporation must not be less than the price to an individual. So that complainant insists that since the annual rental is the same in the bids the *price* is to be determined by the value of royalty without considering the amount of the bonus, which he does not treat as a part of the price. If he is right in that theory, his conclusion would be right because the royalty bid of complainant is more than that of Humble and Gulf. His argument is that the bonus is an inducement to the landowner to sign

the lease and the *value* of the lease is measured by the amount of the proposed royalty only. But the prohibition of section 99 is as to the price for which the state is selling land, not the value of what is sold.

The purchase price of land is the amount or value paid as an inducement for the sale of it. Here the state is selling an interest in that land. Riddle v. Brown, 20 Ala. 412. The consideration is threefold: (1) the so-called bonus, which is the amount of cash presently paid; (2) the so-called annual rental, and (3) the royalty. They each form an integral part of the consideration or price of the rights sold. 58 C.J.S., Mines and Minerals, § 213, pages 539, 540, notes 42-49.

It is next insisted that the bids of Humble and Gulf, not having been received on April 20 cannot be considered. They were evidently before the director of conservation at 11:00 on April 21, when the bids were opened. The contrary is not alleged. The notice as prescribed by the director was that the bids would be received through the 20 day of April. The rule provided that the time be specified in the advertised notice. Section 7, Title 8, Code, conferred on the director "all rule making powers of any division of the department of conservation subject to the provisions of section 9 of this title." Section 9 conferred on the advisory board of conservation the power to amend or repeal such rules and regulations or make recommendations in respect to them. So that, when they are adopted and not amended or repealed, they probably have the status of law. See, State v. Gray, 256 Ala. 391, 55 So.2d 354; West v. State, 242 Ala. 369, 6 So.2d 436.

We judicially know that April 20, 1952 was Sunday. Section 12, Title 1, Code, is that if the last day within which an act is provided by law to be done is Sunday, it must be excluded and the Monday following shall be counted as the last day. Also section 184, Title 39, Code. That seems to be the rule as to contracts even though there is no statute. Brennan

v. Vogt, 97 Ala. 647, 11 So. 893. The time fixed by the director, when it is done pursuant to the requirement of a rule having the effect of a law, is one provided by law.

■■ Upon the basis of that principle, we think, the time for receiving bids was extended into April 21 up to the appointed time for opening them. Therefore, the bids of Humble and Gulf were in due time, sofar as shown by the bill, and might or might not be better than those of complainant. A much larger cash "bonus" was offered and while the royalty was a less percentage of the oil and gas produced and saved, the bill does not allege any facts, experiments or other data upon which may be made a fair estimate of the amount of such mineral products as may be subject to the proposed leases. The director was authorized to use his best judgment in appraising the respective values of the royalty proposals, since that is dependent upon unknown matter. His judgment in that respect is not subject to review, except on grounds not here alleged.

Section 11 of the Act of July 9, 1945, General Acts 1945, p. 554, provides that the sale of minerals or other natural resources of the unused lands of the state (section 7 of the Act of 1945, supra, as amended by the act of September 19, 1949, General Acts 1949, p. 1021), shall be subject to the approval of the Governor. Unused lands are defined by section 219, Title 8, Code, to be "lands not utilized for the immediate purposes of any institution or department, not being cultivated, leased, or mined, and not contiguous to the premises of any department or institution, or state building." That kind of land is what the director is here considering. So that the sale of land, in the nature of oil and gas leases here involved, must meet with the approval of the Governor as well as be subject to the rules and regulations of the department of conservation.

■ That involves a determination by the director and the Governor that the bids of Humble and Gulf are not for a less price than that of appellant. Under section 99 of the Constitution they cannot sell to Humble and Gulf, being corporations, for an amount less than they would sell to complainant, an individual. But the courts will not grant a mandatory injunction nor a restrictive injunction against the director or Governor when to do so would involve a review of their judgment which is not patently arbitrary. State ex rel. Turner v. Henderson, 199 Ala. 244, 74 So. 344, L.R.A. 1917F, 770; State ex rel. Daly v. Henderson, 199 Ala. 428, 74 So. 951; Board of Revenue v. Merrill, 193 Ala. 521, 69 So. 971; Citizens' Bank & Security Co. v. Commissioners' Court, 209 Ala. 646, 96 So. 778; O'Rear v. Sartain, 193 Ala. 275, 69 So. 554.

■ Particularly with reference to the Governor, this question was considered in the Henderson cases, supra. It was there held that, as to matters in which he exercises judgment or discretion, the court has no power to coerce him. But as to ministerial duties, the court's power is to declare the law and the Governor's duty to observe it, and the assumption is that he will do so although he, as Governor, is beyond the coercive power of the court. So that in this case, as to the Governor as well as the director of the department of conservation, our authority ends when it is found that what complainant is seeking is to direct the manner in which the Governor or director shall exercise his judgment or discretion.

The question here is to determine the comparative monetary value of the respective bids, which has an uncertain element and which without a knowledge of the facts necessarily requires the judgment of the officers involved. Therefore the courts are without jurisdiction. The decree sustaining the demurrer to the bill of complaint should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the CHIEF JUSTICE under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.