124 So.2d 825

Peggy **FINCH**

v.

**STATE of Alabama.**

3 Div. 871.

Supreme Court of Alabama.

Dec. 1, 1960.

**500**

Garet Van Antwerp, III, Van Antwerp & Rector, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Jas. T. Hardin, Jos. D. Phelps and Bert S. Nettles, Asst. Attys. Gen., for appellee.

LAWSON, Justice.

The appeal is by Peggy Finch from a final decree of the Circuit Court of Montgomery County, in Equity, entered on March 3, 1959, which set aside, cancelled and held for naught a contract which the State of Alabama entered into with Peggy Finch on September 23, 1958, whereby certain State property was leased to her.

The decree under review was entered in a cause instituted on October 15, 1958, by the State of Alabama on the relation of its then Attorney General, John Patterson, against the then Governor of Alabama,

James E. Folsom; the then Director of Conservation, Robert Folsom; and the lessee, Peggy Finch.

The property covered by the lease adjoins the causeway which links Baldwin County on the east of Mobile Bay with Mobile County on the west. The lease describes a parcel which fronts 95 feet on the north side of the causeway and another parcel which fronts 650 feet on the south side of the causeway. Both parcels have a depth of 200 feet. Some of the parcel on the north side of the causeway is filled land. It was filled at no expense to the State by the father of Peggy Finch, F. H. Wooley, who was a former lessee of that parcel. The 650-foot-wide parcel on the south side of the causeway consists of open water. It cannot be used by Peggy Finch unless she fills it at a cost which will not be less than $31,525. Any land which the lessee makes or constructs by filling or dredging operations becomes the property of the State.

The rental provided for in the lease is $150 per year for the first five years, $200 per year for the next five years, and $350 per year for the last ten years of the twenty-year term. On a front footage basis the lessee is to pay an amount ranging from approximately twenty cents a front foot per year during the first five years to approximately forty-seven cents a front foot per year during the last ten years of the term covered by the lease.

Lessee is given the right to renew the lease for a term of twenty years at an annual rental "in line with rent being paid for similar property."

■ Within constitutional limitations, the legislature has the power to provide for the leasing of State property, the length of the term for which leases may be made, and the general policy relating thereto.

That the legislature has conferred on the Director of Conservation the right to lease the property here involved is conceded. §§ 3 and 6, Title 8, Code 1940; Act 341,

approved July 9, 1945, General Acts 1945, p. 554.

In § 3 of Title 8, supra, the legislature provided:

" * * * The department of conservation shall have full power and authority to sell, exchange, or lease lands under its jurisdiction when in its judgment it is advantageous to the state to do so in the orderly development and management of state forests and state parks and parkways; provided, however, said sale, lease or exchange shall not be contrary to the terms of any contract which it has entered into. * * * "

In § 6 of Title 8, supra, it is provided that:

"All functions and duties of the department of conservation shall be exercised by the director of conservation, acting by himself or by and through such administrative divisions or such officers or employees as he may designate. * * * "

The lease in question is not contrary to any contract previously entered into by the Department of Conservation. There is no contention that the lease is not in proper form or that it was not executed in the proper manner or that it was not approved by the Governor, as is provided in the 1945 Act, supra.

The bill alleged among other things that the lease is "fraudulent and collusive on its face."

■ A court of equity would, of course, have the right to vacate a State contract which was a result of actual fraud. McGehee v. Lindsay, 6 Ala. 16; Driscoll et al. v. Burlington-Bristol Bridge Co. et al., 8 N.J. 433, 86 A.2d 201.

But the decree under review cannot be sustained on the theory that there was direct evidence of actual fraud on the part of any person connected with the execution of the lease. There was no direct evidence

to support a finding that there was any intentional wrongdoing or that either the Director of Conservation or the person who represented the lessee was in any way financially interested in the transaction. With commendable candor the Assistant Attorney General who represented the State at the time the appeal was argued and submitted in this court admitted that there was no direct evidence to support a finding of corruption or intentional wrongdoing going to show a moral or actual fraud.

■ If we understand correctly the position of the State, it would have us affirm the decree vacating the lease on the theory that the consideration expressed in the lease is so greatly inadequate as to shock the conscience and that the inadequacy of consideration amounts in itself to conclusive and decisive evidence of fraud. Juzan v. Toulmin, 9 Ala. 662; Mahone v. Williams, 39 Ala. 202; Cleere v. Cleere, 82 Ala. 581, 3 So. 107; Chance v. Chapman, 195 Ala. 513, 70 So. 676.

No case has been cited by the State and none has come to our attention where an equity court has been called upon to cancel a conveyance of State property on the ground of inadequacy of consideration. The only case cited by the State wherein a contract of a governmental agency was cancelled by a court is Driscoll et al. v. Burlington-Bristol Bridge Co. et al., supra. As we have indicated above, the action of the court in that case was based on the direct evidence going to show fraud and corruption on the part of public officials and others connected with the contract.

Evidence was produced by the State going to show that the monetary consideration expressed in the lease at hand is greatly less than the consideration expressed in leases of other property adjoining the causeway.

The Director of Conservation had rented two similar parcels to separate oil companies for a consideration of $2.00 per front foot per year. A Mobile real estate broker expressed the opinion that the property covered by the lease in question, as well as that leased to the two oil companies, should have brought a rental price of not less than $7.50 per front foot per year. A lesser figure, according to this witness, is unfair to the private individuals who own property adjacent to the causeway.

But we are not willing to say that this disparity in consideration justifies a decree of cancellation by a court of equity of the lease in question.

The evidence shows that on October 11, 1944, the then Director of Conservation leased to one Spaulding for a term of ten years some property on the north side of the causeway. This lease was approved by the then Governor and the then Attorney General. On February 1, 1945, the same Director of Conservation leased to Spaulding for a term of ten years a parcel of property on the south side of the causeway. This lease was apparently approved by the then Governor and the then Attorney General. On March 28, 1946, Spaulding with the approval of the Director of Conservation assigned his leases to F. H. Wooley, the father of Peggy Finch.

The descriptions in the two Spaulding leases were apparently erroneous, for in 1950 a new lease was executed by the then Director of Conservation and by F. H. Wooley for the purpose of correcting the "misdescription" in the leases to Spaulding which were later assigned to Wooley. The term of this lease was from February 1, 1945, through January 31, 1955. The description in this lease covers all of the 95 feet fronting on the north side of the causeway described in the lease in question and a parcel fronting 370 feet on the south side of the causeway, which 370-foot frontage is also included in the description contained in the lease under attack.

On February 1, 1955, a renewal lease was entered into by and between the State of Alabama and F. H. Wooley, which was

substantially similar to the 1950 lease running from February 1, 1945, through January 31, 1955, except that the term was extended to twenty years and there was omitted the provisions which had appeared in the former leases whereby the property could be used only for the "purpose of a Hunting and Fishing Lodge for the benefit of the public." This lease did not contain provisions found in former leases which prohibited the lessee from subletting the leased premises without the lessor's consent. The lease covered a parcel on the north side of the causeway fronting 95 feet on the causeway with a depth of 200 feet and a parcel fronting 650 feet on the south side of the causeway with a depth of 200 feet.

F. H. Wooley died on October 8, 1955. His daughter, Peggy Finch, was appointed administratrix of his estate. On October 31, 1955, the lease of February 1, 1955, was cancelled and a new lease was entered into by and between the Department of Conservation and Peggy Finch, as administratrix of the estate of her father, which was in all material respects the same as the lease to her father under date of February 1, 1955.

Prior to September, 1958, Peggy Finch was discharged as administratrix of the estate of F. H. Wooley. On September 23, 1958, the Director of Conservation executed the lease to Peggy Finch which is here challenged. This lease is in all material respects the same as the two previous leases covering the leased premises.

The consideration expressed in all of the prior leases covering the property at hand is the same as or less than the consideration expressed in the lease at hand.

The evidence shows that there was no demand for this property other than by the lessee. Can fraud be presumed where the consideration in the lease is the same or better than that for which the property or some of it rented as far back as 1944, and where there is no showing of any other op-portunity to rent the property? We think not.

The fact that the Department of Conservation has been able to rent two parcels on the causeway to oil companies for $2.00 a front foot cannot be taken as conclusive proof of fraud where other property is leased for a lesser sum.

Many cases have been before this court in which acts of governing bodies of counties and cities have been attacked as illegal because of alleged abuse of discretion, arbitrary action having no due regard to the public interest and the public trust committed to them.

In all such cases it has become manifest that, if entertained, the court must enter upon an inquiry whether the contract was in fact well advised, the result of fair judgment, having a basis of reason. These are matters which we have recognized as having been committed to the governing bodies of the cities and counties. Great care must be exercised by the courts not to usurp the functions of other departments of government. § 43, Constitution 1901. No branch of the government is so responsible for the autonomy of the several governmental units and branches as the judiciary. Accordingly we have held that courts cannot and will not interfere with the discretion vested in other units or branches of government.

It must be regarded as settled that the court will not interfere except in case of fraud, corruption, or bad faith, the equivalent of fraud. Van Antwerp v. Board of Com'rs of City of Mobile, 217 Ala. 201, 115 So. 239. See Long v. Shepherd, 159 Ala. 595, 48 So. 675; Goodwin v. State Board of Administration, 212 Ala. 453, 102 So. 718; Terrell v. Marion County, 250 Ala. 235, 34 So.2d 160; Nelson v. Mobile Bay Seafood Union, 263 Ala. 195, 82 So.2d 181; Huddleston v. Humble Oil & Refining Co., 260 Ala. 384, 71 So.2d 39; State ex rel. Steele v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689.

**504**

■ Courts should not under the guise of existing judicial power usurp merely administrative functions by setting aside a lawful administrative order upon the court's conception as to whether the administrative power has been wisely executed.

■ The judicial branch of government was not intended to be and will not presume to act as a super agency to control, revise, modify or set at naught the lawful acts of administrative agencies. It is under restraint (§ 43, Constitution 1901) from imposing its methods or substituting its judgment for that of the executive and legislative branches of the government.

It is no doubt because of the adherence by the courts to these principles that the State has been unable to cite to us a single case which supports its position.

■ If the term of a lease such as here involved is to be limited, the limitation must be prescribed by the legislature. It is also within the legislative prerogative to spell out the consideration for which such property may be leased and the general policies relating to such leases. The courts cannot do these things.

We have concluded after a careful consideration of the record before us that the evidence does not justify a finding that the lease under attack was executed as a result of fraud, corruption, or of bad faith, the equivalent of fraud.

It follows that the decree appealed from is due to be reversed and the cause remanded with directions to the trial judge to dissolve any injunction which may be extant which prevents the lessee from going into possession of the leased premises under the lease here involved. It is so ordered.

Reversed and remanded with directions.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.