297 So.2d 357

**STATE of Alabama ex rel. William J. BAXLEY, Attorney General**

v.

**Walter C. GIVHAN et al.**

**SC 529.**

Supreme Court of Alabama.

July 11, 1974.

William J. Baxley, Atty. Gen., George Beck, Deputy Atty. Gen., and Barry E. Teague, Asst. Atty. Gen., for the State.

Pitts, Pitts & Thompson, Selma, Rushton, Stakely, Johnston & Garrett, and William B. Moore, Jr., Montgomery, for appellee, Walter C. Givhan.

Richard H. Gill, Montgomery, and Alston Keith, Jr., Selma, for William H. Bernos and Sylvia Bernos, appellees.

Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, for Alabama Historical Commission, appellee.

McCALL, Justice.

This is an appeal by the State of Alabama from a summary judgment entered against it as the complainant.

The bill of complaint, as amended, brought in the name of the State, on the relation of the Attorney General, charges the respondents, Givhan and the Bernoses, who are appellees, with fraud in and about the sale of the John T. Morgan house in Selma, Alabama, to the Alabama Historical Commission, which is also named as a respondent. It seeks to have the conveyance set aside and the consideration paid therefor refunded, or in the alternative, a rebate. to the State of the amount paid over and above the property's reasonable value.

The John T. Morgan house (site) is the former residence of the late United States Senator John Tyler Morgan, an Alabamian of considerable renown, whose former residence, all of the respondents recognize as

being worthy of preservation on account of particular historical significance.

Pursuant to a written motion filed by the respondents under Rule 56, Alabama Rules of Civil Procedure, 290 Ala. 373 at 547, the trial court rendered a summary judgment for them. The State assigns generally as error the entry of the judgment which also dismissed the suit.

The substance of the bill in its charging part is that the respondents, Givhan and the Bernoses, conspired to defraud and defrauded the complainant (the State) and the Alabama Historical Commission through a scheme, trick or device in and about the sale of the property to the Commission for $65,000. The basis for the alleged fraud is that this payment was obtained through undue influence and was so grossly in excess of the true value of the property as to shock the conscience; that the respondent Givhan, in furtherance of the alleged fraud wrote a letter to the Executive Director of the Alabama Historical Association (Commission), an agency of the State of Alabama, which is constituted a public body corporate, Code of Ala., Tit. 55, § 373(10j) et seq., as amended, in which he stated that he had been advised that the Bernoses would sell the John T. Morgan home to the State for a historical shrine for $65,000, that the house, on a large lot, was near the Sturdivant home, and that he truly believed that with some restoration work, the place could be one of the outstanding historical points in Central Alabama. His letter stated that the Bernoses preferred to deal directly with the State as otherwise a real estate commission would be necessary.

The bill then avers that the Executive Director expressed disinterest in the suggested purchase, but that the respondent Givhan repeatedly pressured him about purchasing the site; that when the respondent received the continued negative answers of the Executive Director and the Commission, the respondent reminded the Executive Director that the Commission would be needing his help as a senator in the State Legislature, when it came time to consider its annual appropriation for capital outlay, and he requested a committal from the Executive Director and the Commission to purchase the site from their proposed capital outlay funds; that the respondent threatened to introduce in the Alabama Senate a bill to create a new and separate historical commission unless the Executive Director and the Commission agreed to purchase the site for $65,000; that the Executive Director and the Commission again refused, whereupon the respondent Givhan introduced and secured passage in the Legislature of a separate appropriation for the purchase of the site for a maximum of $65,000. This was tacked on the House's general appropriation bill as a line item.

The bill of complaint next avers that the respondents continued to pressure the Executive Director and the Commission until they agreed to purchase the site for $65,000; that the respondents represented that the site was worth $65,000; that this was false, it being worth substantially less, and was known to the respondents to be false; that the representation as to value was material and was made with the intent to induce the complainant (the State) to part with the purchase price of $65,000; that the complainant relied on the false representation and bought the house; that the value of the site is so grossly inadequate as to shock the conscience.

The bill further avers that any attempt to appraise the site prior to purchase was a sham as the purchase price had been preconceived and dictated by the respondents a full year prior to any appraisals.

Finally, the bill avers that the action of all of the respondents has resulted in the unjust enrichment of the respondents Bernoses, who owned the site.

The bill prays that the conveyance to the Commission be set aside for fraud and the Bernoses be ordered to repay the $65,000 to the complainant, or in the alternative pay the difference between its reasonable

**536**

value and the actual price paid for the property.

The power and authority of the Alabama Historical Commission to acquire this site by purchase is not disputed. Such seems to be delegated to the Commission by Code of Ala., Tit. 55, § 373(10j) et seq.

As we understand it, the State contends that the respondents were guilty of fraud because they exercised undue influence over the Commission in order to bring about the purchase of the site, at the same time misrepresenting its value to the Commission at an amount grossly in excess of what the property was reasonably worth.

There is nothing in the record to show that the respondent Givhan or any person associated with the Commission was in any way financially interested in a personal manner in the transaction or expected to benefit from it other than gaining the satisfaction that comes normally from recognizing and memorializing a distinguished and notable citizen, and manifesting a representative's interest in his constituents and his district.

■ While it is clear that courts can and should intervene for the protection of the public in instances where there is fraud, corruption, or bad faith—the equivalent of fraud, Van Antwerp v. Board of Commissioners of City of Mobile, 217 Ala. 201, 115 So. 239; Finch v. State, 271 Ala. 499, 124 So.2d 825; Tri-State Corporation, Inc. v. State, 272 Ala. 41, 128 So.2d 505, and should vacate any contract of the State that is the product of actual fraud, McGehee v. Lindsay, 6 Ala. 16; Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 86 A.2d 201; Finch v. State, 271 Ala. 499, 124 So.2d 825, the record here does not make out a genuine issue of fact as to a conspiracy or fraud, and we think it refutes the State's contention that the respondent Givhan successfully exerted any influence over the Commission which resulted in the purchase of the site. It is true that the record reveals that this respondent sought to exercise influence over

the Commission in different ways, but at the same time it shows that his coercion did not bring about the purchase of the site. It should be observed that the Commission declined the respondent Givhan's urging to purchase the site out of its general outlay funds and never did do this. It is equally clear that his successfully sponsoring a line appropriation in the Legislature for the specific purpose of purchasing the site was not at the behest of the Commission and was not a legislative mandate to buy the site or pay $65,000 for it, but an appropriation of that sum of money as a means to purchase the site, such as might be the forerunner in any such endeavor.

It is not reasonable to say that the Commission should have declined buying the site after funds for doing so were provided by the Legislature. The record shows that the site definitely had historical significance. The Commission's actions from this point on were beyond the pale of reproach and demonstrated an unyielding independence unaffected by importuning or suggestions from anyone other than legitimate legal advice requested and received.

After duly making its decision to purchase the site from the line appropriation, the Commission obtained the services of two qualified appraisers to evaluate the property. It appears that separate appraisals were rendered to the Commission by these appraisers before the purchase was completed. There is no contention of wrongdoing on the part of these appraisers. While the respondent Givhan opposed obtaining the appraisals because it would entail delay to secure them, nonetheless, the Commission proceeded to do so.

To us the record reveals that the actions of the Commission and the manner in which those constituting its membership discharged their duties in the premise, including its Executive Director, were observances of candor and circumspection, evident of an awareness of the trust imposed in them as public servants. This is deduced from excerpts from the minutes of the Commission, the letters, and other ex-

hibits that appear in the record. The record further shows that not only were appraisals obtained, but also legal advice was sought preliminary to decisive action being taken in the business relating to the purchase of the site.

We are mindful of the great disparity between the amount paid for the site and the value that the State's appraiser placed on the site. We also are aware that value is a matter of opinion usually inexact in the conclusions arrived at by different witnesses, and what conscientiously may be the opinion of one witness as to value, equally may be the dilemma of another. As the State intimates that the appraisals for the Commission came with a general knowledge of the contemplated purchase, so might the respondents argue that the State's appraisal came with the pending litigation in the case. In neither case however is there evidence that the appraisals were anything other than the honest opinions of those making them.

■ The State argues that "The lower court completely ignored allegations in the appellant's complaint" which charge the respondents Givhan and Bernoses with a fraudulent conspiracy. The State's brief further recites that "The complaint also alleged" that the appraisals were preconceived and sham. But the State may not stand on the mere allegations of its bill when the respondents have filed motions for summary judgment, supported by documentary proof. There was a line of cases in the United States Court of Appeals, Third Circuit, prior to 1963 permitting the plaintiff to rely on the allegations of the complaint, but that line of cases was specifically overruled by a 1963 amendment to Rule 56(e) of the Federal Rules of Civil Procedure. The Alabama Rules embody the 1963 amendment, and provide in Rule 56(e) as follows:

" * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The case law in Circuits other than the Third, and in the Third Circuit since 1963 has consistently supported this view. "[A]n issue of fact must be raised by an affidavit or method other than the mere allegation or denial in pleadings," Robert L. Ferman & Co., Inc. v. General Magnaplate Corp., 33 F.R.D. 326 (D.N.J., 1963). See also Pappas v. Bliss, 36 F.R.D. 691 (D.Ct., W.D.Pa., 1965).

■ We have carefully read the bill of complaint and considered the verified documents which the State has attached to its answer to the motions for summary judgments. In our opinion the matter set forth in support of the answer to the motions fails to disclose the existence of any genuine issue of fact as to fraud for trial in this case.

■ If in instances as here, where fraud is not evident, the court sets itself up as a reviewing authority of the purchase by the Alabama Historical Commission, litigation could result seeking this court's supervision and revision of activity that rightfully is the responsibility and prerogative of the governmental agencies and bodies concerned. This we are without constitutional authority to do and will not undertake to do.

In the case of Finch v. State, 271 Ala. 499, 124 So.2d 825, the State sought to set aside, cancel and hold for naught a contract of lease on the ground that the consideration expressed in the lease was so greatly inadequate as to shock the conscience and that the inadequacy of itself amounted to conclusive and decisive evidence of fraud. The court made these observations:

"Many cases have been before this court in which acts of governing bodies

of counties and cities have been attacked as illegal because of alleged abuse of discretion, arbitrary action having no due regard to the public interest and the public trust committed to them.

"In all such cases it has become manifest that, if entertained, the court must enter upon an inquiry whether the contract was in fact well advised, the result of fair judgment, having a basis of reason. These are matters which we have recognized as having been committed to the governing bodies of the cities and counties. Great care must be exercised by the courts not to usurp the functions of other departments of government. § 43, Constitution 1901. No branch of the government is so responsible for the autonomy of the several governmental units and branches as the judiciary. Accordingly we have held that courts cannot and will not interfere with the discretion vested in other units or branches of government.

"It must be regarded as settled that the court will not interfere except in case of fraud, corruption, or bad faith, the equivalent of fraud. Van Antwerp v. Board of Com'rs of City of Mobile, 217 Ala. 201, 115 So. 239. See Long v. Shepherd, 159 Ala. 595, 48 So. 675; Goodwin v. State Board of Administration, 212 Ala. 453, 102 So. 718; Terrell v. Marion County, 250 Ala. 235, 34 So.2d 160; Nelson v. Mobile Bay Seafood Union, 263 Ala. 195, 82 So.2d 181; Huddleston v. Humble Oil & Refining Co., 260 Ala. 384, 71 So.2d 39; State ex rel. Steele v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689.

\* \* \* \* \* \*

"The judicial branch of government was not intended to be and will not presume to act as a super agency to control, revise, modify or set at naught the lawful acts of administrative agencies. It is under restraint (§ 43, Constitution 1901) from imposing its methods of substituting its judgment for that of the executive and legislative branches of the government."

Rule 56, Alabama Rules of Civil Procedure, supra, permits a defending party against whom a claim has been asserted to move at any time, with or without supporting affidavits, for a summary judgment in his favor. If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, the judgment sought shall be rendered forthwith.

As we have endeavored to point out in the foregoing opinion, we do not find that there is a genuine issue between the parties as to a material fact upon which relief may be granted. We therefore conclude that the respondents were entitled to the summary judgments that were entered by the trial court in their favor. The judgment is affirmed.

Affirmed.

MERRILL, BLOODWORTH and JONES, JJ., concur.

HEFLIN, C. J., concurs in the result.