319 So.2d 710

**STATE of Alabama ex rel. Terrell D. HUGHES and Terrell D. Hughes, individually**

**v.**

**Pat HAMM et al.**

**SC 1205.**

Supreme Court of Alabama.

Sept. 18, 1975.

William J. Baxley, Atty. Gen., and George Beck, Deputy Atty. Gen., and Julian D. Butler, Special Asst. Atty. Gen., for the State.

Cloud, Berry Ables, Blanton & Tatum, Huntsville, for appellees.

EMBRY, Justice.

In this appeal our decision is of necessity limited to a determination of whether the trial court correctly found that no fraud infected the transaction which was the subject matter of this litigation. We, as was the trial court, are confined to the facts and issues *agreed upon by the parties* in the case in making that determination.

The facts·essential to an understanding of the issues presented by this appeal are as follows: During 1971 Messrs. Norman Earley, Herman Watson, Jr. and Jack Giles (partners d/b/a Realty Management Corporation) became aware of the probability that the Huntsville District Office of the Alabama Highway Department would be relocated. Watson contacted Terrell D.

Hughes, a real estate broker, and employed him to locate property suitable for the District Office, to be sold to the State for such. Through an acquaintance at Beaufait Realty Company, Hughes located property owned by Pat Hamm which appeared a suitable site for the Highway Department District Office. Hamm wished to sell and Beaufait assigned to Hughes Beaufait's option to purchase.

On 12 April 1972, Hamm conveyed fifty acres of land to Hughes, acting for the partners. On ·that same date Hughes conveyed that land to State of Alabama for the situs of the Highway Department District Office. This sale was approved by Ray Bass, Acting Highway Director. As a condition for completing the purchase of this property the State required a title opinion showing good and merchantable title in Hughes. The partners obtained such an opinion from one H. Kenan Timberlake. That opinion stated that Hughes was seized of record title to subject property as of 12 April 1972. On 13 April 1972, the State paid $150,000 to Hughes in consideration for the deed executed and delivered on 12 April. After receipt of $150,000 from the State, Hughes paid Hamm $80,000 and recorded a deed from Hamm to him on 14 April 1972.

This action was initiated by a complaint filed by State ex rel. Hughes and Hughes individually, asking that the writ of *quo warranto* issue to Ray D. Bass, Acting Director, State Highway Department and Roy Sanders, Comptroller, State Finance Department (upon Sanders' retirement, Fred Zeigler became comptroller and was substituted for Sanders as a party to this action). The complaint also named as defendants, Pat Hamm and wife Martha Hamm and Louis K. Beaufait d/b/a Beaufait Realty Company, but as to them plaintiff asked for no relief. The writ, directed to Bass and Sanders, was issued. As to Bass it directed that he appear and show by what legal authority he contracted for and purchased the property from Hughes for the State Highway Department. As to Sanders; by what legal authority he, in behalf of the State, paid Hughes for the property.

The complaint alleged in substance that the Attorney General of Alabama had held numerous press conferences suggesting, by "insinuation and innuendo," that the sale and purchase of the property was fraudulent or without proper legal authority; that the Attorney General had failed or omitted to begin any legal proceedings on behalf of the State, criminal or civil, to redress any alleged wrongs. A declaration was sought that the sale and purchase was valid and entered into under proper legal authority.

Following defendants' responsive pleadings, Hughes added Watson, Earley and Giles as parties plaintiff, alleging, in substance, their subjection to the same adverse "insinuation and innuendo," as he, without institution of criminal or civil proceedings to redress any wrongs.

At this point in the proceedings the Attorney General, on behalf of the State, filed a cross-claim against Hughes, Watson, Earley and Giles. This cross-claim alleged that these plaintiffs conspired to defraud the State by misrepresenting the true value of the property and further concealed that true value by securing a title opinion showing the record owner of the property to be Hughes at the time the opinion was rendered. The cross-claim sought compensatory damages of $100,000 and punitive damages of $100,000.

After the filing of the cross-claim several pretrial hearings were held and a great deal of discovery was had by the adverse parties. The court issued three pretrial orders. Embodied in the second order is the following:

"8. The parties agree that the issues to be determined under the Cross-Claim of the State of Alabama are as follows:

"(A) Did Hughes, Giles, Watson and Earley, either jointly, separately or severally, have a duty to divulge or make

known to the State of Alabama what purchase price they, or any of them had paid or were paying for the property that was being conveyed to the State?

"(B) Did the State of Alabama suffer any actionable detriment or incur any actionable damage against any or all of said parties as a proximate consequence of the failure or omission on the part of said parties to divulge and make known to the State of Alabama what value or consideration had been given in the purchase of said tract of land?

"(C) Was the failure or omission in the aforesaid title opinion furnished to the State of Alabama to accurately reflect that the deed conveying the property from Hamm to Hughes was not a matter of public record but that the same was held in escrow as aforesaid an actionable misrepresentation on the part of Hughes, Giles, Watson and Earley?

"(D) Was the actual knowledge of the aforesaid Mr. Smith and Mr. Camp, who were employees of the State of Alabama, sufficient knowledge so as to put the State of Alabama on notice as to the recorded option from Hamm to Beaufait and as to the contents thereof?"

Subsequently, plaintiffs/cross-defendants moved for summary judgment on the main claim and on the cross-claim on the ground there was no genuine issue as to any material fact and they were entitled to judgment as a matter of law. This motion was based on all of the discovery taken in the case by each of the parties. The discovery consisted of fourteen depositions, two sets of requests for admissions and answers thereto, three sets of interrogatories and answers, and numerous other documents submitted upon requests for production. The third pretrial order stated:

"9. That the depositions, answers to interrogatories, admissions, documents submitted in response in (sic) [to] motion to produce, and all such evidence and documents on file and on record in this cause (all of the same being herein-

after referred to as 'the record') reflect and reveal all pertinent and material evidence that the State of Alabama has in support of its Cross-Claim in this cause, and that additional answers to interrogatories would not reveal nor reflect any additional material evidence herein, and that additional answers to interrogatories would be consistent with the now existing record in this cause, and the State of Alabama shall not be required to make any additional answers to interrogatories based upon this stipulation and order."

As we have seen, the motion for summary judgment on the cross-claim was submitted, by agreement of the parties, to the court on only the four issues set out in the second pretrial order, (8. (A), (B), (C), (D)), supra. By agreement of the parties the court was to consider only the evidence contained in the discovery materials and on file in the action as stated in 9 above.

With the case in this posture, our judgment is the same as that of the trial court —summary judgment was properly granted plaintiffs/cross-defendants. The issues to be determined, as agreed upon, were so narrow that summary judgment as a matter of law was correct. To demonstrate there is no genuine issue as to any material fact concerning the agreed-upon issues in this case, we will deal in turn with each of the issues as set out in the pretrial orders.

■ Under the agreement of the parties framing the issues to be determined, posed as questions 8. (A), (B), (C) and (D) in the second pretrial order, the answer to 8. (A) is no. There was no duty, as a matter of law, upon the sellers to divulge to the purchaser the price to be paid by them for the property being sold to the State—the purchaser. There was no special relationship between the parties nor facts creating such a duty, in the absence of which no duty exists.

Reduced to its essential and *material* allegations the substance of the cross-claim charged plaintiffs/cross-defendants with conspiring to defraud the State of Ala-

bama by the false representation that the value of the site sold to the State was $150,000 when in fact it was substantially less; the representation was relied upon by the State and it paid $150,000 for that site to its damage; the alleged false representation was material and made with intent to defraud. Additional allegations were to the effect that material facts were concealed from the State in connection with the alleged false representation; those alleged *material* facts were in reality one only, the concealment of the price to be paid by cross-defendants for the property to be sold by them to the State.

In truth, then, the ultimate *material* fact to be determined is whether the property in question, on the record before the trial court under the issues framed by agreement, is shown to have a value equal to that which was paid for it—$150,000.

■ The stipulations between the State and cross-defendants Hughes, Giles, Watson and Earley found in the second pretrial order contains the following:

"That the State of Alabama, as of this date, has no knowledge or evidence that Hughes, Giels (sic), Watson and Earley, either collectively, separately or severally, made any statements or representations, either orally or in writing or in any other manner, to anyone as to the value or reasonable worth of the real property in question; other than the price they were asking it is stipulated that the State of Alabama shall have the opportunity to make known unto the Court and to add to this pre-trial order any such information or evidence that is discovered or brought to the attention of the State of Alabama in conjunction with the depositions that the State has scheduled on November 13 and 14, 1973."

No evidence was elicited following this pretrial order which demonstrated the existence of a genuine issue of fact that misrepresentations had been made by these parties or either of them as to the value of the real property in question. The failure to divulge the consideration to be paid by them bore no relationship to the value of the property as established by the two appraisals furnished the State, as required by it; both in evidence, both setting the value at $150,000 or more, each made by an appraiser whose qualifications were not challenged. Without dispute the State relied upon the one made by the appraiser selected by it.

"* * * It appears that separate appraisals were rendered to the Commission by these appraisers before the purchase was completed. There is no contention of wrongdoing on the part of these appraisers. * * *

* * * * * *

"* * * value is a matter of opinion usually inexact in the conclusions arrived at by different witnesses, and what conscientiously may be the opinion of one witness as to value, equally may be the dilemma of another. * * *" *State ex rel. Baxley v. Givhan,* 292 Ala. 533, 536, 537, 297 So.2d 357, 360 (1974).

It results that the answer to 8. (B) is likewise, no.

■ Since the *material* fact crucial to deciding the correctness of the ruling of the trial court is the value of the property, vis-a-vis the price paid for it, then escrow of the deed from Hamm to Hughes could be no actionable misrepresentation or concealment on the part of Hughes, Giles, Watson and Earley as to value of the property. There again, the question was, could that lack of public record change the established value of the property as shown by the appraisals utilized by the State in arriving at fair value paid for such property? It could not, therefore the answer to issue 8. (C) is, no.

■ The knowledge possessed by Smith and Camp (employees of the State), if any, of the recorded option from Hamm to Beaufait is no evidence of *value* of the property, the *material* fact upon which the

correctness of entry of summary judgment rests. Under the agreed issues and the evidence in support of the motion for summary judgment no *genuine issue* was made of that sole material fact; 8. (D) was an immaterial issue.

A careful reading of the several pretrial orders, the motion for summary judgment and renewed motion for summary judgment, together with the findings and judgment in this case, makes clear that adjudication was had of the issues as framed, presented both by the original claim and cross-claim.

Lest there be concern that the judgment of the lower court failed to adjudicate the rights or liabilities of fewer than all the parties and therefore that judgment not be final, ARCP 54(b), we should point out what became of original defendants, the Hamms and Beaufait, during the course of the proceedings below. As previously mentioned, the original complaint did nothing other than name them as parties defendant without demanding any relief of them or even inferentially ascribing to either of them any conduct which would entitle that relief be exacted of them. Beginning with the first of the several pretrial orders it is apparent that there, and thereafter, the adversary litigants; Baxley, as the State, versus Hughes, Earley, Watson and Giles, cross-defendants, so framed the issues as to *de facto* dismiss the Hamms and Beaufait as parties to the action.

There was no reversible error in the judgment entered on motion for summary judgment.

"While it is clear that courts can and should intervene for the protection of the public in instances where there is fraud, corruption, or bad faith—the equivalent of fraud (citations omitted), and should vacate any contract of the State that is the product of actual fraud (citations omitted), the record here does not make out a genuine issue of fact as to a conspiracy or fraud, and we think it

refutes the State's contention * * *" Givhan, supra, 292 Ala. at 536, 297 So.2d at 359.

The judgment was dispositive of the issues as framed by the parties to this appeal and since under the evidence upon which the motion for summary judgment was submitted there was no genuine issue as to any material fact—the movants/cross-defendants were entitled to judgment as a matter of law. *Herricks v. Mutual Life Insurance Company of New York, a Corp.,* 294 Ala. 446, 318 So.2d 683 (1975).

Affirmed.

HEFLIN, C. J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.