243 So.2d 748

Burton Eugene HANVEY

v.

Naomi THOMPSON and Neal D. Thompson.

Ex parte Naomi THOMPSON et al.
8 Div. 394, 394A.

Supreme Court of Alabama.

Feb. 4, 1971.

Bell, Richardson, Cleary, McLain & Tucker and James H. Porter, Huntsville, for respondent-appellant.

BLOODWORTH, Justice.

These cases (consolidated on appeal) come to us on a writ of certiorari to the Court of Civil Appeals, 46 Ala.App. 476, 243 So.2d 743. The petition for the writ was assigned to another member of the court on preliminary consideration. After the writ was granted, it was reassigned to the writer.

The writ seeks to have us review and reverse the decision of the Court of Civil Appeals which reverses two judgments for the plaintiffs totalling $10,000, after jury verdicts in their favor in the Madison County Circuit Court.

Humphrey, Lutz & Smith, Huntsville, for petitioners-appellees.

Petitioners (plaintiffs below) contend that the decision of the Court of Civil Appeals (in holding that a certain requested charge should have been given) is a case of first impression in Alabama and is in conflict with a prior decision of our court; and that it construes a statute (Pedestrian Walk and Wait Signals, Title 36, § 58(38), Code of Alabama 1940) which is also a case of first impression in Alabama.

Before the petition was granted, respondent filed a "motion to strike" it. After the writ was granted, respondent filed a "motion to discharge" the writ. In both motions respondent contends that there is no conflict with any prior decision of our court, nor is this a case of first impression in Alabama. Hence, he urges in brief:

"  *   *   *   In the present case the Writ should be discharged because the petition shows on its face that the decision of the Court of [Civil] Appeals does not fall within any of the categories provided by the Legislature in Section 32.[1] The Court of Civil Appeals, in particular, was created in order to reduce the staggering case load under which the Supreme Court of Alabama has toiled for years. Recognizing that the case load and output of decisions of the Supreme Court of Alabama was intolerable, the highest per justice in the United States, *the Legislature narrowly limited the types of decisions for the review of which a petition for writ of certiorari could be granted.* The obvious intent of this limitation was to insure that the Court of Civil Appeals would, in fact, be a Court of last resort rather than a mere

stepping-stone to the Supreme Court. *   *   *"  [Emphasis supplied] [Note supplied]

While we appreciate his alluding to the burdensome case loads under which this court operated prior to October 1, 1969,[2] we cannot agree with respondent's comment that the legislature can narrowly limit the "types of decisions for the review of which a petition for writ of certiorari could be granted."

In the landmark case of Ex parte Louisville & Nashville R. Co., 176 Ala. 631, 58 So. 315 (1912), this court construed Section 140, Constitution 1901,[3] with respect to our power and authority to superintend and control the Court of Appeals (then newly created). As Justice (later Chief Justice) Anderson writing for the court observed:

"  *   *   *   The Constitution authorizes the creation of an inferior appellate court with final jurisdiction, and, when said court is given final jurisdiction, this court is shorn of appellate jurisdiction, but the jurisdiction so made is subject to the superintendence and control of the Supreme Court by the express terms of the Constitution. The Legislature did not intend to establish an appellate court with co-ordinate jurisdiction and powers with the Supreme Court, and could not have done so, under the Constitution, had it so intended. 'It is not in the power of the Legislature to make the Supreme Court inferior in any respect to any other tribunal, but it remains, secure from legislative attack, the highest judi-

---

1. Act No. 987, Acts of Alabama 1969, Vol. II, p. 1744.

2. The effective dates of Act No. 987 (creating the Court of Civil Appeals and redesignating the Court of Criminal Appeals), supra, and Act No. 602 (adding two justices to the Supreme Court), Acts of Alabama 1969, Vol. II, p. 1087.

3. "Sec. 140. Except in cases otherwise directed in this Constitution, the supreme court shall have appellate jurisdiction only, which shall be coextensive with the

state, under such restrictions and regulations, not repugnant to this Constitution, as may from time to time be prescribed by law, except where jurisdiction over appeals is vested in some inferior court, and made final therein; provided, that the supreme court shall have power to issue writs of injunction, habeas corpus, quo warranto, and such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions."

cial power distributed by the Constitution. There must be in every state a court capable of exercising ultimate judicial power. * * * In this state * * * that is the Supreme Court. If it were otherwise, there would be no organ of government capable of authoritatively settling judicial questions; and there must be such an organ there can be no doubt, for the judicial department is an independent one, and the element of sovereignty delegated to that department must, as in the case of the executive and legislative, reside, in its last and highest form, in one tribunal, one officer, or body of officers. While we are clear that no statute can deprive the Supreme Court of its rank as the highest and ultimate repository of judicial power, we are equally clear that appellate jurisdiction of an inferior grade may be conferred upon other appellate tribunals. The Legislature cannot, under the guise of conferring inferior appellate jurisdiction upon other tribunals, grant them unlimited appellate jurisdiction; but it may grant such tribunals appellate jurisdiction by limiting it to classes of cases not of the highest grade and restricting its authority to appeals from recoveries of a limited nature.'—Branson v. Studabaker, 133 Ind. 147, 33 N.E. 98.

"Not only does the Constitution reserve unto this court the power and authority to superintend and control the Court of Appeals, but the act creating the Court of Appeals (Gen.Acts 1911, p. 100, § 10) recognizes the power of this court to control the proceedings and decisions of said Court of Appeals. It says: 'The decisions of the Supreme Court shall govern the holdings and the decisions of the Court of Appeals, and the decisions and proceedings of such Court of Appeals shall be subject to the general superintendence and control of the Supreme Court as provided by section 140 of the Constitution of the state.' * * *."

Likewise, in Act No. 987, supra, the act creating the present Courts of Appeals, the legislature recognizes the power of this court to control the proceedings and decisions of the Courts of Appeals. Section 10 of the Act is but a copy of that section of the Acts of 1911, quoted supra.

Justice Anderson went on to say for the Court, beginning at page 636, 58 So. at page 317:

"This court has previously construed the meaning of the words 'superintendence and control' as used in former Constitutions, and we must assume that, when they were brought forward into section 140 of the present Constitution, they were used and employed subject to their well-known interpretation. In the case of Ex parte Croom & May, 19 Ala. [561], 566, it was said: 'It is the duty of this court, in order to enable it to carry out the powers with which the Constitution invests it, of exercising "a general superintendence of inferior jurisdictions," to adopt such course of proceedings as will make its control complete. Ex parte Chaney, 8 Ala. 424.' In the case of Ex parte Candee, 48 Ala. [386], 412, the court quotes approvingly from the case of Ex parte Croom & May, supra, and says: 'Under this section of the Constitution, the Legislature may impose such restrictions and regulations, not repugnant to the Constitution, upon the appellate jurisdiction of this court, but it [the legislature] *has no power to limit or prescribe the mode and manner in which it* [the Supreme Court] *must exercise its power to issue the writs therein named, and such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions.* If they could, the power thus conferred upon this court by the Constitution might be so crippled and embarrassed as to render it worthless for the great and salutary purpose contemplated by the Constitution.' " [Emphasis supplied]

■ Thus, we conclude that the legislature does not possess the power (as re-

spondent suggests in brief) to narrowly limit "the types of decisions for the review of which a petition for writ of certiorari could be granted." We think this power resides in this court.

On December 14, 1970, we amended our existing Rule 39 to provide the method by which we consider applications for writs of certiorari to the Court of Appeals. It so happens that we chose to limit our review to the same classes of cases prescribed in Section 32, Act No. 987, supra.

And, though we limit our review at this time to those instances delineated in Rule 39, as amended, we still preserve our constitutional right to prescribe the mode and manner in which we will exercise the power to issue writs of certiorari and any other remedial writs which we deem necessary to give us general superintendence and control over the Courts of Appeals. Ex-parte Louisville & Nashville R. Co., supra.

■ We wish to call the attention of bench and bar to the statement in Ex parte State of Alabama ex rel. Attorney General (In re: Clarence Stallworth v. State of Alabama), 285 Ala. 72, 229 So.2d 27 (1969), that the clerk of the court is instructed to return, without filing, all petitions for writs when no attempt was made to comply with Act No. 987, Section 32, supra. The court has now decided that this practice is no longer to be followed. All petitions for writs will be filed by the clerk. In the event a petition for a writ does not comply with Rule 39, as amended, it will be subject to being stricken on motion of a party or ex mero motu by the court. To this extent and to the extent that our Rule 39, as amended, is to be followed instead of Section 32, Act No. 987, supra, the *Stallworth* case is modified. It is not here intended to otherwise modify or overrule *Stallworth*.

■ After a careful consideration of the respondent's several motions we have concluded that neither is well taken and each ought to be denied. The full court in consultation has concluded that the petition for writ of certiorari in this case does substantially comply with our amended Rule 39 and sets forth sufficient grounds for our review.

To enable a clear understanding of this opinion, we deem it necessary to recount the relevant facts. Plaintiff, Naomi Thompson, a pedestrian, was injured when struck by an automobile driven by defendant. The accident occurred at the intersection of Holmes and Washington Streets in Huntsville. Holmes is a one way street going west. Washington Street is one way going north. A traffic light facing south and controlling traffic on Washington Street is situated on the northeast corner of the intersection. Also located on this corner and facing south is a light for pedestrians containing the lighted words, "Walk" or "Don't Walk." A similar pedestrian light is positioned on the southeast corner of the intersection, facing west. These lights are synchronized in such a manner that when the pedestrian lights signal "Walk," no traffic moves into the intersection and pedestrians can proceed in any direction, including diagonally. Conversely, no pedestrian can walk when traffic is moving on either street. The plaintiff arrived at the southwest corner of the intersection, looked at the northeast corner and observed that the traffic light was red and that the pedestrian's light signalled, "Don't Walk." Plaintiff proceeded easterly across Washington Street without looking at the pedestrian light facing her on the southeast corner. It was raining at the time and she had an umbrella protecting her from the rain. Two cars were stopped, side by side, on Washington Street in response to the red traffic light that the plaintiff had observed on the northeast corner. The light turned green as plaintiff passed in front of the first automobile. The driver of that vehicle saw the plaintiff and allowed her to clear before driving on. The defendant, who was in the second car, says he did not observe the plaintiff and started forward

when the light changed to green. Defendant's automobile struck the plaintiff, thereby resulting in her injuries. The plaintiff testified that she was familiar with this intersection and the manner in which the traffic and pedestrian lights operated.

And, now we address ourselves to the principal question raised, whether the Court of Civil Appeals erred in its decision which reversed the Madison County Circuit Court for refusing to give defendant the following written requested charge:

"The Court charges the jury that, under the evidence in these cases the plaintiff, Naomi Thompson, was negligent as a matter of law, and if you are reasonably satisfied from the evidence that said negligence proximately contributed to cause her injuries, your verdict in these cases cannot be in favor of either plaintiff and against this defendant, Burton Eugene Hanvey, under Count One of the complaints."

Petitioners contend that the charge is bad and was properly refused by the trial judge because it is vague, abstract and misleading. Petitioners query: In what respect was this plaintiff negligent as a matter of law? Was she negligent because she violated a statute? Then, what statute? Petitioners state that the Court of Civil Appeals decision indicates her negligence was not confined solely to her violation of a statute, but included her other acts. Thus, they contend that the charge is misleading because it does not advise the jury which of her other acts were those constituting negligence as a matter of law.

Respondent replies that the charge is neither vague, abstract nor misleading but is very specific. He contends that it should have been given by the trial court. On submission of the case at oral argument, respondent cited Simpson v. Glenn, 264 Ala. 519, 88 So.2d 326 (1956), as authority for his position.

After a careful consideration by the entire court in consultation we have concluded that the charge is misleading.

The opinion of the Court of Civil Appeals does seem to hold that the plaintiff, Naomi Thompson, was guilty of negligence as a matter of law in violating the statute, and also in not keeping a proper lookout. But, the charge does not so state. The jury is left in a state of uncertainty as to which act or acts of plaintiff constituted her "said negligence."

As petitioners aptly observe in brief:

"Giving this charge would not inform the jury of any specific conduct on the part of the plaintiff which constituted negligence as a matter of law. This being true, how could the jury then proceed to evaluate the plaintiff's so-called negligent conduct in terms of proximate cause? The pertinent part of the last half of the charge says '* * * and if you are reasonably satisfied from the evidence that *said negligence* proximately contributed to cause her injuries * * *.' (Emphasis added.) What 'said negligence' is referred to? Of course, we know from the Court's opinion that reference is made to violation of a statute and to other conduct in general. But from the charge itself, we know nothing. The charge is, therefore, confusing and misleading."

The case of Simpson v. Glenn, supra, cited by respondent does not militate against our conclusion that the charge is misleading. In that case the charge was:

" 'The court charges the jury that if you are reasonably satisfied from the evidence that Mrs. Glenn was crossing 12th Street Southwest, at Princeton Alley, then in such event she was guilty of negligence as a matter of law.' "

The facts of that case are stated in the opinion:

"Plaintiff's intestate was run down by the automobile of the defendant while

**620**

attempting to cross 12th Street at the place stated in the charge in the city of Birmingham in the nighttime. This conduct of the plaintiff's intestate was in violation of Sec. 1292(a) of the General City Code of Birmingham of 1944, which reads as follows:

" 'It shall be unlawful for any pedestrian to cross any street at any other place than a street intersection, and in crossing any street at the intersection thereof with another street such pedestrian shall pass over that part of the street which is included within the lines of the sidewalk projected and not diagonally.' "

Justice Simpson writing for the court concludes:

"It thus appears that Charge Z which was given for the defendant was founded upon a violation by the plaintiff's intestate of the aforesaid traffic ordinance. After a careful study we have reached the conclusion that the charge stated a correct legal principle. * * *"

We think it is readily apparent that there are several distinctions between that charge and the charge in this case. For instance, the charge in Simpson v. Glenn, supra, clearly states that the act of negligence on the part of Mrs. Glenn is her crossing 12th Street at Princeton Alley. This, she did in violation of a city ordinance forbidding pedestrians to cross at other than street intersections. Additionally, there is no other conduct charged as negligence in that case such as the Court of Civil Appeals found to exist in the instant case.

There may also be other reasons why refusal of this charge by the trial court was not error. But, we think our discussion is sufficient to point out that in our view the charge is misleading and the Court of Civil Appeals is in error in holding that the charge should have been given.

Though the issue is not before us we think we may point out that we agree with the Court of Civil Appeals in its opinion in holding that the affirmative charge was properly refused the defendant.

Thus, in view of our conclusions, it results that the Court of Civil Appeals is due to be reversed and this cause remanded to that court for the entry of a decision not inconsistent with this opinion.

Reversed and remanded with directions.

HEFLIN, C. J., and LAWSON, SIMPSON, MERRILL, COLEMAN and McCALL, JJ., concur.

HARWOOD and MADDOX, JJ., concur in the result.