EMBRY, Justice.
Fred A. Williamson, defendant below, appeals from judgment adverse to him entered by the trial court after trial ore ten-us. That judgment granted relief to George W. Cline and wife, plaintiffs below, by reformation of deed to real estate to the Clines and one to Williamson as well as a declaration that Williamson had no right, title or interest in the real estate claimed by the Clines. We affirm.
The Facts
The genesis of this litigation was the sale of properties of Alabama Fuel and Iron Company at White’s Chapel, St. Clair County, Alabama, after that Company ceased operation of its underground coal mining operations in St. Clair County. Acmar Land Company, Inc., acquired the disputed parcels here involved, along with others, which in turn it sold to predecessor in title of Williamson and to George W. Cline. Among those parcels of real estate, with improvements thereon, which were re-conveyed were Lots A-8 and A-9. The problem, which gave rise to this litigation, arose from the fact that under lease-sale contracts the purchasers of Lots A-8 and A-9 took possession of and occupied dwelling houses on the respective lot sold to the other.
The specifics are: George W. Cline and wife, Nettie Lou Cline, entered into a lease-purchase contract on 13 February 1951 with Acmar Land Company, Inc. (Ac-mar Land hereinafter), for the purchase of House No. A-9. They immediately took possession of, and occupied, a dwelling house on Lot No. A-8. The dwelling house bore the designation “A-9” by marker attached to it. H. A. Cline, the father of George Cline, was delivered a deed to Lot A-8 from Acmar Land bearing date of 4 January 1956. He and his wife then occupied a dwelling house next door to that already occupied by George Cline. After the death of H. A. Cline, Lot A-8 was sold under decree of the Circuit Court of St. Clair County for division of the proceeds among his heirs at law, including George, who was a party respondent to the suit culminating in that sale. The purchaser of Lot A-8 at that judicial sale was Lee and Phillips Company. The conveyance by deed of the register of the court bore date of 12 May 1967. M. F. Phillips and wife entered into a lease-purchase contract with Lee and Phillips Company for the purchase of Lot A-8 on 2 June 1967. Subsequently, on 12 March 1974, the Phillips conveyed that Lot to Fred A. Williamson. The dwelling house situated on Lot A-9, in which H. A. Cline had lived and which stood thereon at the time Phillips purchased it from Lee and Phillips Company, was destroyed by fire. In March 1974, when Williamson bought after the fire of about December 1973, he understood that he was purchasing a vacant lot. At that time the George Clines were still living in the A-9 dwelling house situated on Lot A-8. About June of 1974, Williamson questioned ownership of the Clines to the house and lot they occupied.
The Case
In October 1974 the Clines filed their complaint in this case. It sought reformation of the deed from Acmar Land to the Clines by substitution of “Lot A-8” for “Lot A-9” therein and a declaration that *792 Williamson had no right, title or interest in Lot A-8 by virtue of mutual mistake resulting in the misdescription in the deed, and title in them because of adverse possession of Lot A-8 for more than twenty years. Fred A. Williamson, Acmar Land Company, Inc., a Corporation and Marc Levine were named defendants in the complaint.
Levine answered to the effect that he had no knowledge of any mistake of description in the Cline’s deed; that Acmar Land had claimed no possessory interest in either Lot A-8 or Lot A-9 since 1951 when it surrendered possession of both under lease-sale contracts; he did not claim any interest in either lot and had never claimed any interest in same. He prayed he be dismissed as a party defendant, or the court adjudge him to have no claim or interest in, or to, either lot.
Levine, through attorneys, filed what was captioned “Motion to Quash Service.” In that motion he prayed that purported service on Acmar Land Company, Inc., a Corporation, be quashed because “many years ago” he sold his interest in that corporation; had not since been an officer or director; did not know the present owner of that company; did not know the current officers of the corporation or whether it still existed. Purported service on the corporation was had by serving Levine. The record shows the following entry on that motion:
“This motion is sustained and Acmar Land Company, Inc., must be served otherwise if possible.”
The record reveals no further or other attempted service on Acmar Land.
Williamson filed a 12 (b) 6 motion to dismiss, after the overruling of which he filed an answer that amounted to a general denial of the material allegations of the complaint. The case came on for trial before the court without a jury. Williamson conducted his own defense of the action, his counsel having previously withdrawn. The case was submitted on the complaint, answers of the defendants Levine and Williamson, oral testimony of witnesses and documentary evidence. The final decree contained findings of fact:
“The Court so finds from the evidence adduced that George W. Cline and wife, Nettie Lou Cline intended to purchase the house and property that they went into possession of; and the Court makes the specific finding from the evidence adduced that George W. Cline and wife, Nettie Lou Cline, went into possession of said house and premises under a claim of right, and said possession has been actual, exclusive, open, notorious and continuous for a period of over 20 years.
“The Court further finds from the evidence adduced at the trial that at the time the Deed to George W. Cline and wife, Nettie Lou Cline was made, that a mistake in the description on the deed was made and reformation of the deed is therefore ordered.
“The Court further makes the specific finding from the evidence that it was the intention of the Lee & Phillips Company, Inc., to purchases (sic) at the Court Sale the H. A. Cline, Sr. property which the Lee & Phillips Company, Inc. then sold to M. F. Phillips and wife, Willie Ruth Phillips, the house that burned, and which the Defendant, Fred A. Williamson, purchases (sic) from M. F. Phillips and wife, Willie Ruth Phillips.
“It is Therefore ORDERED, ADJUDGED AND DECREED, L (sic). That the deed from Acmar Land Company, Inc., to George W. Cline and wife, Nettie Lou Cline * * * and the same is hereby reformed so that the description of the land thereby conveyed shall read as follows:
Lot A-Eight (A-8) together with all improvements thereon * * *
and the Register of this Court is hereby directed to make a Deed of Correction to *793 George W. Cline and wife, Nettie Lou Cline, correcting said description of land as above described * * *
“2. That the Register of this Court is hereby directed to make a Deed of Correction to Fred A. Williamson of that Deed * * * from M. F. Phillips and wife Willie Ruth Phillips to Fred A. Williamson, so that the description of the Lands thereby conveyed shall read as follows:
Lot Number A-Nine (A-9). together with all improvements thereon
“3. That Fred A. Williamson has no right, title or interest, either at Law or in Equity, to the lands known as Lot A-8, Acmar Land Company’s White’s Chapel Subdivision, as described above.”
The Issues
(1) Was Acmar Land Company, Inc., an indispensible party without the presence of which the trial court lacked jurisdiction to grant the relief rendered by its judgment?
(2) Was the evidence relating to the existence of a mistake in descriptions contained in the Cline and Williamson deeds sufficiently clear, exact, and satisfactory, that entry of judgment ordering reformation of those deeds was without error?
(3) Was the evidence sufficient to justify a finding that the Clines had been in adverse possession of the property claimed by them for more than twenty years and that such possession was under a claim of right ?
The Decision
We answer the questions posed in issues numbered 2 and 3 in the affirmative. Eubanks v. Richards, 294 Ala. 30, 310 So.2d 883; Cotton v. May, 293 Ala. 212, 301 So.2d 168; Jones v. Wise, 282 Ala. 707, 213 So.2d 914. We do not deem it necessary to write an opinion on these issues. Code of Ala., Tit. 13, § 66:
“§ 66. (10336) Justices to fix specifications of reports; when written opinions not required. — The chief justice and associate justices of the supreme court, or a majority of them, may fix and determine the specifications of the said reports as to contents, type, size of page, length of line, character of appearance and binding. The report of each case shall contain and be prefaced by a statement of the facts of the case and an abstract of briefs filed, with the names, volumes and page of authorities cited. The justices of the supreme court and the judges of the court of appeals shall not be required to write opinions in cases where the decisions merely reaffirm previous decisions, or relate to questions of fact only, or when the cases decided would, in their opinion, serve no useful purpose as precedents; but the title of every case decided by said courts, and not reported in full, shall be published in the reports with brief notes of the points decided or a statement of the disposition made thereof. The reports must contain the name of the judge before whom the case was tried, the names of the attorneys for appellant and appellee, and the name of the justice or judge who wrote the opinion and the names of those concurring or dissenting. (1915, p. 594; 1919, p. 533.)”
While the above cited statute authorizes disposition of issues 2 and 3 as we have done, this court has inherent power to determine what treatment is to be afforded such issues. Hanvey v. Thompson, 286 Ala. 614, 243 So.2d 748.
However, an opinion should be written on issue No. 1, as it involves interpretation of Rule 19 ARCP within the framework of the facts in this case. Rule 19 reads:
“Rule 19”
“JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION
“(a) Persons to be Joined if Feasible. A person who is subject to jurisdiction of *794 the court shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring, double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
"(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (l)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed amont the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person’s absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person’s absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoin-der.
“(c) Pleading Reasons for Nonjoin-der. A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a) (l)-(2) hereof who are not joined, and the reasons why they are not joined.
“(d) Exception of Class Actions. This rule is subject to the provisions of Rule 23.”
The evidence supports the conclusion that Acmar Land disclaimed any possesso-ry rights in either of the properties involved in this litigation as early as 1951. Therefore, it may not be said that in the absence of Acmar Land “ * * * complete relief cannot be accorded among those already parties, or * * * ” it “claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. * * * ” (emphasis ours).
The findings of fact, conclusions of fact and law, and the judgment entered by the trial court demonstrate it considered those factors which Rule 19(b) admonish be considered when deciding whether a party is indispensable. After consideration, it is patent that the correct conclusion was reached when judgment was entered in the absence of Acmar Land. In this case, not only was no relief demanded of Acmar Land, but also, no valid service was had to effectively implead it as a party defendant. Since the complaint demanded no relief of Acmar Land, Rule 19(c) did not come into play, as’ well for that reason, as for the reason the complaint did not describe, as a matter of law, a party within the ambit of Rule 19(a) (l)-(2). Since Acmar Land was never in fact a party there was no occasion for motion or court order to drop it under Rule 21 ARCP. State ex rel. Hughes v. Hamm, 294 Ala. 584, 319 So.2d 710 (1975).
*795 It is evident the trial court had no difficulty, under the evidence, in determining that in equity and good conscience the action should proceed among the parties before it. To thus proceed could in no wise prejudice Acmar Land, the Clines or Williamson. Judgment rendered in the absence of Acmar Land was certainly adequate. On the other hand the Clines would not have been afforded an adequate remedy had the action been dismissed for nonjoinder of Acmar Land. Rule 19(b), ARCP.
Affirmed.
HEFLIN, C. J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.